## LYMAN P. WHITE v. WESTERN ASSURANCE CO.

Argued Jan. 16, 1893. Decided Jan. 20, 1893.

**Questions which this Court will not Review.**

Ordinarily this court will not decide a cause upon a question of law which it is manifest was not presented to, and passed on by, the trial court, especially where it is such that, had it been there raised, it might have been obviated by amendment of the pleadings, or the introduction of further evidence.

**Sporting House.**

In a policy of insurance the house insured was described as "occupied as a sporting house." *Held* that, as the term "sporting house" has an innocent as well as guilty meaning, it cannot be said, without proof of the sense in which it was used, that the policy shows conclusively that the occupancy of the house was for unlawful purposes.

**Trial of an Issue not Presented by the Pleadings.**

Where it is not apparent that the parties consented to try an issue not made by the pleadings, evidence that might be proper upon such an issue is not to be considered in respect to it.

Appeal by defendant, the Western Assurance Company, from a judgment of the District Court of Crow Wing County, *Holland*, J., entered September 17, 1892, in favor of plaintiff Lyman P. White for $655.94.

On January 26, 1891, the defendant insured the plaintiff for the term of one year from that date against loss or damage by fire on his "one and a half story frame dwelling house occupied as a sporting house situate on lot one (1) in section twenty-five, T. 45, R. 31, .in the City of Brainerd, Minnesota." The house was on June 18, 1891, consumed by fire. Notice was given and proofs of loss made and served, and on September 14, 1891, this action was commenced to recover the insurance.

The defendant answered that, by the terms of the policy, it was to be void if the interest of the insured was other than the unconditional and sole ownership of the property; or if the building stood on ground not owned in fee simple by the insured; or if the building should be, or become vacant or unoccupied and so remain for ten days. The answer then alleged that the insured was not the owner of the house or of the land on which it stood; and that it became actually vacant and was unoccupied for more than ten days before the fire. The answer made no reference to any improper use of the house.

The issues were tried April 7, 1892, and plaintiff had a verdict. Some evidence given on the trial to show that the house was occupied, tended incidentally to show that both the house and its occupants were of ill fame; but no point was made that the contract of insurance was invalid as contrary to law or public policy.

*W. S. McClenahan, W. H. Mantor*, and *Kueffner & Fauntleroy*, for appellant.

*Leon E. Lum*, for respondent.

GILFILLAN, C. J. Action on a policy insuring a dwelling house, which the policy states to be "occupied as a sporting house." The complaint quotes from the policy the part describing the house, and stating its occupation. The answer quotes from the policy several

conditions upon which it was to become void, or which were conditions precedent to the right to·recovery on it; and alleges breaches in, or failure to comply with, such conditions. Among those of which a breach is alleged is one that, if the house should become vacant or unoccupied, and so remain for ten days, the policy should be void. There was no suggestion in the answer that the house was occupied, or intended to be occupied, for an illegal purpose, or that the insurance was effected with a view to continue any such occupancy.

There was no attempt to set up as a defense that the contract of insurance was illegal. At the trial the only issue of fact litigated was as to the house being vacant for ten days.

At the close of plaintiff's evidence defendant moved for a dismissal, on the ground "that plaintiff has failed to prove facts sufficient to sustain a cause of action," which was refused. At the close of all the evidence the defendant asked a direction to find a verdict for defendant, without stating any reason for asking it, and which was refused. There was a verdict and judgment for plaintiff.

The point now made is that the policy was void, because upon a house occupied for unlawful purposes,—purposes making it a public nuisance. It is manifest that the point was not made in, nor decided by, the court below. It is undoubtedly suggested here for the first time. In the record there is not, from beginning to end, a word to suggest a claim by defendant that the contract was void for that reason, or that either the plaintiff or the court understood it to make such a claim. The cause evidently proceeded and was tried on the theory that, except for the matters alleged in the answer, the plaintiff could recover. It is a rule that generally this court will not decide a cause upon an issue of fact or law not presented to and passed on by the trial court; and that, where it is unquestionable that the party tried his cause upon one theory, either of the facts or the law, in the court below, he will not be permitted to shift his ground, so as to present an entirely different theory here. *Keyes* v. *Clare*, 40 Minn. 84, (41 N. W. Rep. 453;) *Bond* v. *Corbett*, 2 Minn. 248; *Johnson* v. *Sherwood*, 45 Minn. 9, (47 N. W. Rep. 262;) *Cochrane* v. *Quackenbush*, 29 Minn. 376, (13 N. W. Rep. 154.)

The rule probably would not apply where the record shows conclusively that the party recovering is not entitled to recover, as where a complaint shows conclusively, so that it cannot be helped by proof or amendment, that there is no cause of action, or where it appears by evidence incapable of being rebutted or explained away that there is no cause of action, or that there is a defense. But to permit a party, upon an appeal, to shift his ground so as to present here a question of law not raised in the trial court, in a case where, had it been presented there, the court might have obviated it by allowing amendments, and the introduction of further evidence, might enable him to mislead the trial court and the opposite party, and so, really, to commit a fraud.

Without intimating whether, had the occupation of the house, as described in the policy, been for an unlawful use, it would have rendered the policy void, we will merely consider whether the terms used show conclusively that the occupation was for such a use. If, in fact, after the policy issued, the house was occupied for illegal purposes, that would not render the policy void *ab initio;* whether it would be cause to avoid it would depend on its conditions.

The term "sporting house" does not necessarily mean a house kept or used for unlawful sports or practices. The definition in the Century Dictionary is: "A house frequented by sportsmen, betting men, gamblers, and the like." One of its definitions of "sportsman" is: "One who sports; specifically, a man who practices field sports, especially hunting or fishing, usually for pleasure, and in a legitimate manner." A house would not be a public nuisance merely because frequented by such men, or kept for their use. The term having an innocent as well as a guilty meaning, the sense in which it was used in the policy was open to proof upon an issue made upon the validity of the policy, by reason that it contemplated an unlawful occupation of the house. There was no such issue made by the pleadings; and, although there was evidence from which the jury, on such an issue, might have found that the parties used the term in the unlawful sense, there is nothing in the proceedings to indicate that the parties understood they were trying, or consented to try, such an issue.

That evidence was not, therefore, to be considered in respect to such an issue.

Judgment affirmed.

(Opinion published 54 N. W. Rep. 195.)