STATE ex rel. THEODORE T. SKYLLINGSTAD v. ANGUS GUNN and Others.[1]

June 24, 1904.

Nos. 13,902—(108).

**Certificates of Indebtedness.**

Chapter 181, p. 253, Laws 1901, entitled "An act to authorize county commissioners to issue certificates of indebtedness in certain cases," and purporting to legalize certain county orders issued under the provisions of chapter 302, Laws 1895, which had been declared unconstitutional, and to authorize the county commissioners to provide for their payment, is constitutional.

**Title of Act.**

The subject of the act is expressed in its title. It is not special legislation. Nor does it attempt to impose unjust and unequal taxation, or to exercise judicial power by legislation.

**Mandamus.**

The county commissioners may be compelled by mandamus to take the necessary action to provide for the payment of the orders.

Alternative writ of mandamus issued from the district court for Pine county on relation of Theodore T. Skyllingstad, commanding defendants, as county commissioners of that county, to cause to be issued and negotiated pursuant to chapter 181, Laws 1901, certificates of indebtedness sufficient to pay a county warrant for $597 held by relator, and from the proceeds of such certificates to pay said warrant with interest. From a judgment entered pursuant to the order of Crosby, J., quashing the writ and dismissing the proceedings, plaintiff appealed. Reversed and remanded.

*Ell Torrance,* for appellant.

*M. B. Hurley,* County Attorney, and *S. G. L. Roberts,* for respondents.

START, C. J.

Appeal from a judgment quashing the alternative writ of mandamus, and dismissing the proceedings herein, on the ground that neither the

[1] Reported in 100 N. W. 97.

petition nor the writ states facts sufficient to constitute a cause of action or to entitle the relator to the relief demanded.

The facts alleged in the petition and writ are to the effect following:

On July 15, 1896, the board of county commissioners of the county of Pine, in the state of Minnesota, upon a proper petition, and in conformity with the provisions of Laws 1895, p. 712, c. 302, duly made an order laying out and establishing in the county a public highway described in the petition and writ. The road is seven miles in length. The board, upon notice duly given, and in full compliance with such statute, entered into a written contract with C. A. Kelsey for the construction of such road for the sum of $4,179. The contractor in all things performed the contract on his part. His work was inspected and accepted by the board, and the road so constructed has ever since been, and now is, used as a public highway. On September 28, 1896, the county auditor of the county of Pine duly issued, to the contractor for such work, orders on the treasurer of the county in various sums and to the aggregate amount of the contract price, in accordance with section 11 of the act herein referred to. The orders were then presented to the county treasurer for payment, and by him indorsed: "Presented for payment September 28, 1896. Not paid for want of funds." One of the orders, for the sum of $597, was thereafter purchased by the relator in good faith, for a valuable consideration, and without knowledge on his part of any defect in the statute under which it was issued. The order was duly indorsed and delivered to him. No provision has been made by the county for the payment of the order, and no part thereof has ever been paid. The act under which the highway was laid out and the orders for the payment of the work of its construction were issued was on June 26, 1900, adjudged unconstitutional. In view of the hardships resulting to the relator and others in like situation, the legislature of the state enacted chapter 181, p. 253, Laws 1901, approved April 9, 1901. The relator on May 8, 1901, at a regular meeting of the respondents, as the board of county commissioners of the county of Pine, duly requested them to take proper steps to issue and negotiate the certificate of indebtedness of the county, sufficient in amount to pay and take up such orders. They, however, refused to comply with such request or with the requirements of such act, or to make any provision for the payment of the orders.

The petition prayed that a writ of mandamus be issued commanding them to discharge such duty.

Chapter 181, p. 253, Laws 1901, is entitled: "An act to authorize county commissioners to issue certificates of indebtedness in certain cases."

Section 1 thereof provides that in all cases where any public highway theretofore laid out by the commissioners of any county pursuant to chapter 302, p. 712, Laws 1895, and for the construction of which orders have been drawn upon the county treasurer for the whole or any part of the contract price, and presented for payment and indorsed "Not paid for want of funds," for the payment of which no provision has been made, shall become a lawful indebtedness of such county. And, further, that the county commissioners of such county "in which said public road or highway has been constructed and has been, and is now, used as a public road or highway" are authorized to issue and negotiate certificates of indebtedness of the county for an amount sufficient to take up and pay such orders, with interest at the rate of four per cent. per annum.

Section 2 of the act provides that the board of county commissioners shall levy a tax sufficient to meet the principal of such certificates as they mature.

It is obvious that the allegations of the petition and writ are sufficient to bring the relator's case within the purview of chapter 181. It follows, then, that if this act is constitutional, and mandamus is the appropriate remedy to enforce its provisions the decision of the trial court was wrong. The first and important question, then, is the constitutionality of the act. The respondent claims that it is unconstitutional, for the reasons following:

1. The subject-matter of the act is not expressed in its title. It is the contention of the respondent that the real subject of the act is the creating of a debt against counties without their consent, while the subject, as expressed in the title, "An act to authorize county commissioners to issue certificates of indebtedness in certain cases," is merely incidental to the actual subject of the act. The rules of construction applicable to the constitutional mandate that "no law shall embrace more than one subject, which shall be expressed in its title," have been so definitely settled and fully illustrated by the repeated

decisions of this court that it is unnecessary to repeat them here, further than to say that any statement in the title of an act which fairly calls attention to the subject of the bill, although in general terms, is all that is required. Lien v. Board of Commrs. of Norman Co., 80 Minn. 58, 82 N. W. 1094; Winters v. City of Duluth, 82 Minn. 127, 84 N. W. 788; State v. Board of Control, 85 Minn. 165, 88 N. W. 533. There is nothing in the body of the act in question foreign to the subject expressed in the title. On the contrary, the title clearly suggests the provisions found in the body of the act, for the words of the title, "An act to authorize county commissioners to issue certificates of indebtedness in certain cases," necessarily imply that the act deals with county indebtedness as a basis for such certificates, and fairly advise the legislature and all interested persons and parties that the act relates to such indebtedness. The title of the act is sufficient. Flynn v. Little Falls Ele. & W. Co., 74 Minn. 180, 77 N. W. 38, 78 N. W. 106.

2. It is further claimed that the act is void as special legislation, for the reason that it is based upon an improper classification, because it singles out those cases where the holders had presented their warrants or orders to the county treasurer and had them indorsed "Not paid for want of funds," and says that those warrants shall constitute a lawful indebtedness of the counties. All other warrants, orders, and bonds still remain void, even though they may have been issued for the same purpose, and even to the same man, as were those which are declared a lawful indebtedness of the counties. This assumes what does not appear from the face of the act, and of the existence of which we have no actual knowledge, namely, that there were at the time of the passage of the act outstanding orders or warrants issued by counties for the building of public roads established under the provisions of chapter 302, p. 712, Laws 1895, for the payment of which no provision had been made other than those provided for by the act. The presumption is that the act is constitutional, and that the legislature included in the classification adopted all cases of like character.

While we are required to take judicial notice of all facts bearing upon the constitutionality of a statute (State v. Cooley, 56 Minn. 540, 58 N. W. 150, and State v. Stearns, 72 Minn. 200, 75 N. W. 210), yet we do not in fact know, and have no means of knowing, whether there were similar orders outstanding which had never been presented for

payment. The presumption is that there were not, and that all orders would in the ordinary course of business be presented and indorsed as the act provided. The act is a remedial one, and applies to all counties of the state which have established roads and issued orders for their construction, under the provisions of the act, for which no provision for their payment has been made. The existing conditions which are made the basis of this classification are such as to suggest a practical necessity and a manifest propriety for different legislation with reference to such counties than would be necessary or proper for the whole state. We therefore hold that the classification was proper, and that the act is not special legislation. Alexander v. City of Duluth, 77 Minn. 445, 80 N. W. 623. This case is clearly distinguishable from the cases of Hetland v. Board of Commrs. of Norman Co., 89 Minn. 492, 95 N. W. 305, and Thomas v. City of St. Cloud, 90 Minn. 477, 97 N. W. 125, for in each of those cases the classification was obviously arbitrary.

3. The remaining reasons urged why the act is unconstitutional are that it attempts to create a liability where none existed before, without the consent of the party charged, also to impose unjust and unequal taxation, and, lastly, to exercise judicial power by the legislature. These several alleged reasons are so closely allied that they may be conveniently considered together.

It is important, in considering these objections to the act, to keep in mind the exact character of the liability imposed by the act upon the several counties within the class therein named as disclosed by the facts admitted by the motion to quash the writ. The liability is represented by county orders issued in payment for the construction of public highways, within the counties, laid out and established by the board of county commissioners of such counties respectively. But the orders are void for the sole reason that the statute authorizing their issue has been, since they were issued, declared unconstitutional, because it imposed the burden of laying out, establishing, and constructing county highways exclusively upon the owners whose land was within one mile of the center of the highway—a burden "to be borne by the few for the benefit of the public generally." Sperry v. Flygare, 80 Minn. 325, 83 N. W. 177. The public highways, however, remain. The contractors whose labor and money built them cannot remove them nor enforce a lien against them. The public, of necessity, will enjoy the

benefits of them precisely as it does the benefits of county highways which have been paid for. It is suggested in this connection by counsel for the respondent that, the act under which the highways were established having been declared invalid, they cannot be regarded as public highways. The suggestion is without merit. It is alleged in this case, and admitted by the motion to quash the proceedings, that the road for the construction of which the orders were issued is, and has been ever since its acceptance by the board of county commissioners, a public highway. Again, it does not necessarily follow in any case that, because the act is invalid, the roads laid out and constructed pursuant to its provisions were not public highways of the respective counties at the time of the enactment of chapter 181, p. 253, of the Laws of 1901. This act authorizes only county commissioners of counties in which the road has been constructed "and has been and is now used as a public road or highway" to provide for the payment of orders issued for its construction. The public use of such roads, and the acquiescence of the owners of the land over which they were constructed, by acceptance of their damages or otherwise, would constitute them public highways. The basis of the act making the orders issued for the construction of such highways a legal indebtedness of the respective counties is the equitable obligation of the counties to pay its invalid orders issued for money expended and labor performed in constructing public highways of the county, the benefits of which they do and will enjoy so long as the highways exist.

This brings us to the question of the constitutional power of the legislature to impose such liability upon the counties. The counties of this state, like townships, are quasi corporations, created solely for governmental purposes, and hold their property, not as private owners, but for the performance of their duties as public agencies. It is true that the legislature has not such absolute power over them that it can apply property held by them to private purposes, or compel them by taxation to raise money to be applied to such purposes. But it is equally true that counties, as public agencies, are subject to the control of the legislature as to the establishment of public highways within their limits, and the payment of the cost of their construction and maintenance. Guilder v. Town of Otsego, 20 Minn. 59 (74); Guilder v. Town of Dayton, 22 Minn. 366; County of Hennepin v. Bartleson,

37 Minn. 343, 34 N. W. 222; Maltby v. Tautges, 50 Minn. 248, 52
N. W. 858.

It would have been entirely competent in the first instance for the
legislature to have provided for the construction of the highways
authorized by chapter 302, p. 712, Laws 1895, at the cost of the respec-
tive counties, and because it did not so provide the act was held to be
unconstitutional. The remedial act here in question (Laws 1901, p.
253, c. 181) does not attempt to create a liability where no equitable
obligation existed before; it simply places the burden of providing
for the payment of the construction of such highways upon the respec-
tive counties where it originally equitably belonged. The legislature
had the constitutional power to require the counties to provide for the
payment of such equitable obligations, for the state has the unquestioned
power to require its public agencies to discharge imperfect legal obliga-
tions which rest upon value received, as distinguished from a bonus,
gift, or donation. Kunkle v. Town of Franklin, 13 Minn. 119 (127);
Comer v. Folsom, 13 Minn. 205 (219); New Orleans v. Clark, 95 U. S.
644; Erskine v. Steele County (C. C.) 87 Fed. 631; Beals v. Board,
35 Cal. 624; Town v. Board, 13 N. Y. 143; People v. Flagg, 46 N. Y.
401; Wrought v. Town, 119 N. Y. 204, 23 N. E. 542.

The remedial act in question is not an attempt to impose unjust and
unequal taxation. Every free public highway in a county, to some ex-
tent, directly or indirectly benefits all the people of the county. The
extent of such benefits accruing to the counties from the establishment
and construction of public highways therein pursuant to the supposed
authority conferred by chapter 302, p. 712, Laws 1895, and the taxing
district which should bear the burden of paying for the construction
of such highways, are legislative questions, with which the courts can-
not interfere. Maltby v. Tautges, 50 Minn. 248, 52 N. W. 858. Nor
is the act an attempt to exercise judicial power by the legislature be-
cause it makes the orders issued and received in payment of the con-
struction of the highways a legal indebtedness against the counties,
instead of the amounts due the contractors who executed the work of
construction. The contractors accepted county orders in payment of
their work, and it is the holders of the orders, whether as payees or
indorsees, who are the parties entitled to relief; hence it was neces-
sary to legalize the orders given in payment for building such roads

as were in use as public highways at the time the act was approved. It is only such orders that are legalized, and whether any particular orders fall within this class is left a judicial question for the courts. In the case of Kunkle v. Town of Franklin, 13 Minn. 119 (127) an act of the legislature (Laws 1865, p. 111, c. 53) legalizing town bonds, issued without authority, to pay bounties to soldiers, was held constitutional. The case of Comer v. Folsom, 13 Minn. 205 (219), is to the same effect.

4. The last claim made in support of the judgment of the district court is that mandamus will not lie to compel the board of county commissioners to take the necessary steps to provide for the payment of the orders, because the relator has an adequate remedy at law by suit on his order, and, further, that the language of the act is merely permissive, enabling the board in its discretion to act. The relator's legal remedy, conceding he has one, would not be a full and speedy one or just to the counties. The fact that the language of the act authorizing the board of county commissioners to provide for the payment of the orders is not in terms mandatory is not conclusive of the question whether the board may be compelled to do so by mandamus. The rule is that, whenever public interests or individual rights call for the exercise of a power given to public officers, the language used in conferring the power, although permissive in form, is in effect imperative. Bowen v. City of Minneapolis, 47 Minn. 115, 49 N. W. 683. This case falls within the rule, and mandamus will lie to compel the county officers to take steps to provide for the payment of the orders.

. It follows that the trial court erred in dismissing the petition and alternative writ, and that the judgment appealed from must be reversed, and cause remanded to the district court for further proceedings not inconsistent with this opinion. So ordered.