JOHN A. VORBECK v. CITY OF GLENCOE AND OTHERS.[1]

October 27, 1939.

Nos. 32,272, 32,288.

[1]Reported in 288 N. W. 4.

*W. W. Merrill,* City Attorney, and *Fletcher, Dorsey, Barker, Colman & Barber,* for appellants.

*J. P. O'Hara* and *W. F. Odell,* for respondent.

STONE, JUSTICE.

Appeals, consolidated here, from two orders, the first granting and the second refusing to discharge a temporary injunction.

In 1936 the electors of the city of Glencoe authorized a general bond issue of $75,000 to pay for the site, buildings, and distribution system necessary for the establishment of a municipal light and power plant. There followed two separate purchases of generating machinery at a cost of $135,976.25. They were financed by certificates of indebtedness bearing interest at four and one-half per cent. The certificates were payable solely from net earnings of the plant and were subject to prepayment.

In March, 1939, the light and power commission of the city contracted with investment houses for the sale of $135,500 of three and one-half per cent revenue bonds to provide money to refund the outstanding certificates. These also were to be paid exclusively from net earnings of the plant, after deducting operating and maintenance costs and interest on the general obligation bonds issued to finance the plant. This contract contained the following provision:

"Whenever the principal of any bond issued hereunder shall fall due and shall not be paid within sixty days thereafter, or any interest thereon shall become due and remain unpaid for one hundred and twenty days such nonpayment shall constitute a default hereunder. Upon the happening of any such default and on giving one hundred twenty days written notice to the Commission of the intention to take such action, the holders of a majority in principal amount of the outstanding bonds may * * *

"(b) Apply to any Court of competent jurisdiction for the appointment of a receiver, with such powers and duties as such Court shall direct, to take control of said plant and system during the period of default and to manage and direct operations thereof for the purpose of paying the cost of the operation and maintenance and the principal of and interest on all obligations payable from the Light and Power Plant Fund."

Plaintiff, respondent here, seeks to enjoin because, he asserts (1) the commission had no power to issue refunding revenue bonds; (2) such power, if possessed, was not properly exercised; (3) the bonds, if otherwise proper, are invalidated by the provision quoted above; (4) the so-called curative act, L. 1939, c. 137, is inapplicable; and (5) if applicable, is void because, in violation of Minn. Const. art. 4, § 27, it embraces more than one subject. Decision below was based upon the latter three points.

■ Our conclusion is that the curative act is applicable to the involved revenue bonds and so decisive. Its language is general and inclusive, covering "all cases" where a utility commission of any city or village "has made a contract, or adopted proceedings for furnishing water, gas, steam heat, electric or telephone service * * * or for the issuance or sale of pledge orders, warrants, bonds or certificates, payable solely from the earnings of a public utility * * *." There follows the declaration that "such contract or proceedings are hereby legalized, and all such pledge orders, warrants, bonds or certificates issued or to be issued are hereby legalized and declared to be valid and binding obligations

of said city or village, payable solely from the revenues of such public utility * * *."

It is significant that the act (§ 3) is declared to be "remedial in nature, being necessary to protect the financial credit of such villages and cities." From plaintiff's position, the trouble with the law is that it spreads over too much, rather than too little, of the territory of permissible curative legislation.

The argument *contra* is that these bonds are not within the act because their provision attempting to authorize a receivership makes them payable otherwise than out of utility earnings. In that we cannot agree. The bonds themselves, as well as the proceedings authorizing them, expressly make them payable solely out of earnings. Certainly it cannot be assumed that any court, by receivership or otherwise, would so illegally enlarge the rights of the bondholders as to pay them from any source other than earnings.

The argument for plaintiff is that inasmuch as these bonds are to be issued without "the approval, first obtained, of the majority of the electors" of Glencoe, they violate 1 Mason Minn. St. 1927, § 1938-6. The conclusion should be, it is argued, that these bonds are not within the curative act because it is impossible to assume that the legislature intended to repeal or amend that section. Assuming, without deciding, that these bonds are within the scope of the statute requiring an election, the complete answer to plaintiff's argument is that, as in the case of most curative acts, there is no purpose to amend or repeal existing and applicable legislation. The intention is rather and only to validate, notwithstanding failure to comply with some or all of the requirements of existing law. Such a purpose, where, as here, plainly declared, will be effectuated if within constitutional limitations.

■ Too plain for argument is the proposition that what sovereign power may authorize in prospect it may adopt and validate in retrospect. State ex rel. Board of Education v. Brown, 97 Minn. 402, 106 N. W. 477, 5 L.R.A. (N.S.) 327.

■ There remains plaintiff's challenge of the law upon the ground that it embraces more than one subject and so violates

Minn. Const. art. 4, § 27, reading: "No law shall embrace more than one subject, which shall be expressed in its title." The point is that the law deals with (a) contracts or proceedings for furnishing utility services; (b) contracts or proceedings for furnishing such services to areas adjacent to but outside the municipality; (c) contracts or proceedings for financing such enterprises solely out of earnings.

To adopt that argument would be to impose upon legislative power a limitation not expressed in the constitution and to be added thereto only by an avoidable, wholly impractical, and unduly refined implication. Between the effort of acquiring and constructing a public utility and the concurrent or later financial operation of paying for it, or providing for payment, there is such connection that the whole cannot be said to embrace two unrelated subjects. See Hamilton v. Village of Detroit, 83 Minn. 119, 85 N. W. 933. The whole enterprise is, in ordinary contemplation, one subject matter. Decision on acquisition necessarily involves consideration also of payment or providing means of payment, including items of interest and refunding. All matters dealt with by this act have "a logical or natural connection." They are factually akin to one another and so present nothing "dissimilar and discordant." Johnson v. Harrison, 47 Minn. 575, 577, 50 N. W. 923, 28 A. S. R. 382. On the point of supposed unconstitutional duplicity, that decision rules this case.

Section 2 of the law legalizes the obligations, if any, of a municipality or commission "to charge sufficient rates so as to pay interest and principal on such pledge orders, warrants, bonds or certificates." We cannot see that this provision has any present significance otherwise than as the expression of abundant caution in covering with particularity one item of the single subject matter of the law, the erection, maintenance, and financing of municipal public utilities.

It follows that the injunction was unwarranted and that the orders under review must be reversed.

So ordered.