D. W. HOLEN AND ANOTHER v. MINNEAPOLIS-ST. PAUL METROPOLITAN AIRPORTS COMMISSION AND OTHERS. GLENN F. LOVERING AND ANOTHER v. MINNEAPOLIS-ST. PAUL METROPOLITAN AIRPORTS COMMISSION.

84 N. W. (2d) 282.

June 21, 1957—Nos. 37,241, 37,242.

*Oppenheimer, Hodgson, Brown, Baer & Wolff,* for appellant commission.

*Dorsey, Owen, Barker, Scott & Barber,* for appellant banks.

*Rischmiller & Wasche* and *Fred Sorenson,* for respondents.

MATSON, JUSTICE.

In each of two actions involving the same issues, consolidated for trial and for review by this court, defendant Minneapolis-St. Paul Metropolitan Airports Commission appeals from a summary judgment for the plaintiffs. In one of said actions defendant banks appeal.

Plaintiffs, property owners residing in the vicinity of the Wold Chamberlain Field airport (herein referred to as Wold Chamberlain), brought these actions on their own behalf as taxpayers and in behalf of all other taxpayers in the city of Minneapolis against the Minneapolis-St. Paul Metropolitan Airports Commission (herein called the commission). One of the actions was also against seven banks. The summary judgments, from which the appeals are taken, enjoined the commission from proceeding in any manner with the execution of a commission-adopted plan for the improvement and development of Wold Chamberlain— including the enjoinment of the issuance of bonds to finance the undertaking—"unless and until the Commission holds a public hearing in accordance with the provisions of M. S. A. 360.124."[1] The defendant

---

[1] Section 360.124 provides:

"In determining whether a new airport shall be acquired or established or an existing airport expanded, the corporation shall, before taking any action thereon, hold a public hearing in accordance with the procedure set forth in Laws 1947, Chapter 363.

"In determining whether a new airport shall be acquired, or an existing airport enlarged, altered, or improved, or additional facilities obtained or existing facilities abandoned or removed, and in the determination of the use of new or existing airports, the corporation shall take into consideration the adequacy of present airport facilities, the present or proposed location, size and layout, the relationship of the proposed airport to a comprehensive

banks, in the action to which they were parties, were enjoined from purchasing or taking any action with respect to said bonds until such public hearing had been held.

The essential facts are not in dispute. Pursuant to L. 1943, c. 500, the commission, a public corporation organized under the laws of Minnesota, took over the possession and operation of Wold Chamberlain Field, a municipal airport located in Hennepin County. Under the commission's management, Wold Chamberlain has been enlarged from 614 acres to 3,000 acres (including land authorized to be, but not yet, acquired), and extensive improvements have been made. Investments in Wold Chamberlain presently total almost $12,000,000.

At the time these suits were commenced, the commission had already adopted and was proceeding with a master plan or program for the improvement and development of Wold Chamberlain at an estimated cost of $23,500,000. The contemplated improvement and development involves no territorial expansion but comprises the construction of a new passenger terminal and administration building; construction of a building or buildings for lease to Northwest Airlines, Inc., to house Northwest's major maintenance, overhaul, and operational headquarters; construction of buildings for lease to other airlines; and appurtenant construction such as utilities, roads and parking areas, runways, taxistrips, and aprons.

Although the commission has held public hearings in connection with all acquisitions of land for the territorial enlargement of Wold Chamberlain, no public hearings have been held with the respect to the adoption of the aforesaid master plan for the internal development and improvement of the airport. The commission simply announced

plan for area-wide, state-wide and nation-wide development; whether there are safe areas available for expansion purposes; whether the adjoining area is free from obstructions based upon a proper glide ration [sic], the nature of the terrain, the nature of the uses to which the enlarged or new airport will be put, and the possibilities for future development; the need for additional space and expansion of facilities on existing airports, the needs of aviation industries generally in the area, and the effect the creation of a new airport or the enlargement of an existing one will have upon the property in the surrounding area of said airport to be established or enlarged." Enacted by L. 1947, c. 363, § 18.

the adoption of the master plan at one of the land-acquisition hearings.

In considering whether the trial court erred in concluding that § 360.124 required the commission to hold a public hearing before it could lawfully adopt and proceed with a plan for the internal improvement and expansion of the airport facilities at Wold Chamberlain (as distinguished from territorial expansion), we shall first consider the possible effect of L. 1957, c. 275, which amends M. S. A. 360.124 and which was enacted by the legislature subsequent to the entry of judgment by the trial court and during the pendency of the appeals herein. The amendatory act is set forth verbatim in the accompanying footnote.[2] If the 1957 amendment is controlling, we need not consider whether the trial court erred in interpreting the prior statute as requiring a public hearing.

---

[2] L. 1957, c. 275, reads as follows:

"Section 1. Minnesota Statutes 1953, Section 360.124 is amended to read:

"360.124 New airport; public hearing

"Subdivision 1. In determining whether a new airport shall be acquired or established or an existing airport expanded *by the acquisition of and annexation thereto of additional lands,* the corporation shall, before taking any action thereon, hold a public hearing in accordance with the procedure set forth in this act; *and in reaching such determination, the corporation shall take into consideration the objectives of the act as set forth in section 360.101; and shall take into consideration the use or uses to be made of the new airport or the use or uses to be made of the lands to be acquired and annexed to an existing airport, and shall take into consideration the effect the acquisition or establishment of the new airport will have upon the residents and properties in the area surrounding such new airport, or, in the case of the acquisition and annexation of lands to an existing airport, the effect such acquisition and annexation will have on residents and properties in the area surrounding such lands; and with respect to the new airport to be acquired or established, the commission shall take into consideration, in addition to the foregoing, the adequacy of present airport facilities in the area over which the corporation has jurisdiction, the nature of the terrain at the site thereof and in the vicinity of such site, whether there are safe areas available for expansion purposes, and whether the adjoining area is free from obstructions based on a proper glide ratio; and to aid the commission in giving consideration to such objectives and factors, and in reaching such determination, evidence may be offered and shall be received as to such*

■ Plaintiffs contend that the 1957 amendment ought not to be considered on this appeal. It is true that, regardless of how erroneous or improvident the theory upon which a case was tried below, litigants are usually bound by such theory, and upon appeal it is the general rule that this court will not consider questions which were not presented to or decided by the trial court. This general rule, however, is subject to the well-established exception that an appellate court may base its decision upon a theory not presented to or considered by the trial court *where the question raised for the first time on appeal is plainly decisive of the entire controversy on its merits, and where,* as in the present case involving undisputed facts, *there is no possible advantage or disadvantage to either party in not having had a prior ruling by the trial court on the question.*[3] In the light of such exception there is no merit in the contention that this court ought not to consider whether the 1957

---

*objectives and factors at the public hearing herein provided for.*

*"Subd. 2. Section 360.124 as thus amended so far as the holding of public hearings is concerned shall operate not only prospectively, but retroactively so as to eliminate the necessity of public hearings, if any were or are required under such section prior to this amendment, as to any and all pending or contemplated alterations, improvements or developments, whether or not contracted for, of any airport under the jurisdiction of the corporation, including but not limited to the addition thereto of structures and facilities for use of or lease to others by the corporation, and all orders, resolutions, motions, plans, and agreements therefor are hereby declared valid and effective notwithstanding the absence of public hearings with respect thereto, if any were or are required under section 360.124 or under any judicial determination prior to this amendment.*

*"Subd. 3. Minnesota Statutes 1953, sections 645.31 and 645.35, shall not be construed to apply to this act."* (The amendatory changes in § 360.124 effected by c. 275 are indicated by italics.)

[3]Chicago, M. & St. P. Ry. Co. v. Sprague, 140 Minn. 1, 5, 167 N. W. 124, 126; Bauman v. Metzger, 145 Minn. 133, 140, 176 N. W. 497, 500; White v. Western Assur. Co. 52 Minn. 352, 354, 355, 54 N. W. 195, 196; Skolnick v. Gruesner, 196 Minn. 318, 265 N. W. 44; 1 Dunnell, Dig. (3 ed.) § 384(7). As to cases involving both the legality and contravention of public policy upon undisputed facts, see Hart v. Bell, 222 Minn. 69, 23 N. W. (2d) 375, 24 N. W. (2d) 41; Ray v. Homewood Hospital, Inc. 223 Minn. 440, 27 N. W. (2d) 409. Nearly 100 years ago this court recognized the exception to the general rule in Hawke v. Banning, 3 Minn. 30 (67).

amendment to § 360.124 is determinative of this appeal.

■ Is the amendment by its own terms applicable to this case? Clearly, the 1957 legislature intended its amendatory legislation to be curative. Subd. 2, added by c. 275 (see footnote above), expressly declares that, with respect to any and all pending or contemplated alterations, improvements, or developments of an airport under the jurisdiction of the commission, § 360.124 as amended shall, *insofar as the holding of public hearings are concerned,* operate not only prospectively, but *retroactively* so as to eliminate the necessity of public hearings, *if any were or are required under such section prior to this amendment.* Any doubt that the legislature intended the amendment to be curative of *any defect resulting from the failure to hold a public hearing is swept away by subd.* 3 which expressly declares that §§ 645.31 and 645.35 (general saving clause statutes) shall not be construed to apply to the amendatory act.[4]

■ Where, pending an appeal from a judgment, the legislature changes the former law upon which the judgment is based—so as to legalize a prior proceeding adjudged to be invalid under the former law —must the appellate court decide the question according to the former or according to the law which prevails at the time of decision of the appeal? When the legislature changes the law while a case is pending, but prior to the rendition of judgment, the court may not perpetuate the old law but must apply the new. There is no vested right in an existing law nor in an action until *final* judgment has been entered therein.[5] An appeal suspends a judgment and deprives it of its finality, and that lack of finality continues until the appeal is dismissed or until the appellate court has pronounced its decision.[6] Since a court has no power to perpetuate a rule of law which the legislature has either changed or

---

[4]See, State v. Chicago G. W. Ry. Co. 222 Minn. 504, 25 N. W. (2d) 294; Troy v. City of St. Paul, 155 Minn. 391, 193 N. W. 726; 17 Dunnell, Dig. (3 ed.) § 8923.

[5]State v. Chicago G. W. Ry. Co. *supra*; 11 Am. Jur., Constitutional Law, § 372.

[6]See, People v. Bank of San Luis Obispo, 159 Cal. 165, 112 P. 866, 37 L. R. A. (N. S.) 934, Ann. Cas. 1912B, 1148; Annotation, 111 A. L. R. 1317, 1321; 10 Dunnell, Dig. (3 ed.) § 4967a.

repealed,[7] it follows that amendatory or curative legislation, though enacted after the rendition of a judgment and pending the appeal, must govern the final disposition of the case upon appeal. Both reason and the weight of authority uphold the view that when an amendatory statute, which is clearly intended to be retroactive and applicable to pending litigation *involving public rights,* is enacted after judgment and pending appeal, the appellate court must dispose of the case in accordance with the law as changed by such amendatory enactment.[8] Recent decisions show that there is little conflict with respect to the controlling principles and that the apparent disagreement in the decisions can be almost entirely eliminated by distinguishing between judgments affecting private rights and those affecting public rights.[9]

■ Retrospective or curative legislation is, of course, prohibited under U. S. Const. Amend. XIV, when it divests any private vested interest.[10] It is clear, however, that a public right may always be modified or annulled by subsequent legislation without contravening the due process clause.[11] Even after a public right has been established by judgment of the court, it may be annulled by subsequent legislation and may not thereafter be enforced.[12] Clearly, there is a definite distinction between the effect to be given to a retroactive statute when it relates to private rights and when it relates to public rights.[13]

[7]State v. Chicago G. W. Ry. Co. *supra;* State v. Tennyson, 212 Minn. 158, 2 N. W. (2d) 833, 139 A. L. R. 987.

[8]United States v. The Schooner Peggy, 1 Cranch 103, 2 L. ed 49; Annotations, 111 A. L. R. 1317 and 171 A. L. R. 1352; see, Donaldson v. Chase Securities Corp. 216 Minn. 269, 13 N. W. (2d) 1; Lane v. Johnson, 283 N. Y. 244, 28 N. E. (2d) 705.

[9]Annotation, 171 A. L. R. 1352, 1353. Since, as will be shown, the instant case involves no vested private rights, the authoritative rule of this decision is necessarily limited to curative legislation enacted after an adjudication of public rights.

[10]McCord v. Sullivan, 85 Minn. 344, 88 N. W. 989; Snortum v. Snortum, 155 Minn. 230, 193 N. W. 304; 17 Dunnell, Dig. (3 ed.) § 8923.

[11]See, State ex rel. Skyllingstad v. Gunn, 92 Minn. 436, 100 N. W. 97.

[12]Hodges v. Snyder, 261 U. S. 600, 603, 43 S. Ct. 435, 436, 67 L. ed. 819, 822.

[13]Graham & Foster v. Goodcell, 282 U. S. 409, 429, 430, 51 S. Ct. 186, 194, 75 L. ed. 415, 440, 441; Swayne & Hoyt, Ltd. v. United States,

In the instant case plaintiff taxpayers are seeking the enforcement of a public right, a right in which they have no more interest than any other taxpayer, a right which is, therefore, subject to divestment by curative legislation after judgment, even though in the particular suit the action was brought by individuals primarily for their own benefit.[14] The judgment in the present case does not have the effect of vesting or establishing property rights in any individual. That a public right does not become a vested right on the entry of judgment has been determined by the Supreme Court of the United States in a case peculiarly parallel to the present case. Hodges v. Snyder, 261 U. S. 600, 43 S. Ct. 435, 67 L. ed. 819. Because of the similarity in the facts of the Hodges case, a rather complete summary of that decision is in order.

Plaintiffs in the Hodges case were resident taxpayers who filed a complaint challenging the validity of the organization of a consolidated school district and sought to enjoin the erection or maintenance of schools therein and the issuance of bonds. The state supreme court declared the organization unauthorized by law then in force, and an injunction was issued. The legislature thereupon enacted curative legislation validating retroactively any school district organized in like fashion, and the court, applying the act, ordered vacation of the injunction. On appeal to the United States Supreme Court, the plaintiffs conceded that the curative act would have been valid had it been enacted prior to adjudication, but they contended that to apply a statute enacted after adjudication in vacation of a permanent injunction was to deprive them without due process of law of private property rights vested in them under the adjudication. The court, however, held that, even though *a private right vested by judgment cannot be taken away by subsequent legislation, the rule is inapplicable to a suit for the enforcement of a public right, which, even after judgment, may be annulled by subsequent legislation.*

 It is also well settled that a legislature may cure, by retro-

---

300 U. S. 297, 302, 57 S. Ct. 478, 480, 81 L. ed. 659, 663; Commr. of Int. Rev. v. Northern Coal Co. (1 Cir.) 62 F. (2d) 742, 746; Bradford v. County of Suffolk, 257 App. Div. 777, 15 N. Y. S. (2d) 353.

[14]Hodges v. Snyder, 261 U. S. 600, 604, 43 S. Ct. 435, 437, 67 L. ed. 819, 822.

spective act, irregularities in the exercise of power which it has conferred on a municipal corporation. Otoe County v. Baldwin, 111 U. S. 1, 4 S. Ct. 265, 28 L. ed. 331; see, Tiaco v. Forbes, 228 U. S. 549, 33 S. Ct. 585, 57 L. ed. 960.[15] Since the question of the propriety and necessity of improvements for a public use is legislative and in no sense judicial, no hearing thereon is required,[16] and the legislature in its discretion may require, or not require, a public hearing and may also validate a prior action of the commission by legalizing defects in the hearings or by dispensing with such hearings in their entirety. It is too plain for argument that what the sovereign power may authorize in prospect, it may adopt and validate in retrospect.[17]

Plaintiffs contend, however, that § 360.124, subd. 1, as amended by c. 275, gives the taxpayer a *retroactive* right to be heard on the question of *what effect the annexation of additional lands will have on the residents in that area* and that a new determination factor has been introduced which makes it necessary for the commission as a matter of due process to open the prior hearings. This contention has no validity whatever. In the first place, *subd. 1,* unlike subd. 2, *contains no language expressive of a legislative intent that it should be retroactive.* In the second place, subd. 1 applies only to territorial expansion and not to programs of internal improvements.

Despite the fact that § 360.124, subd. 1, unlike subd. 2 thereof, is not retroactive, and despite the further fact that we are not here concerned with any program for, or with any issue pertaining to, the territorial expansion of Wold Chamberlain, plaintiffs nevertheless assert that the contract rights of purchasers of bonds heretofore issued by the commission will be jeopardized or invalidated. Since subd. 1 has no application, this contention is wholly without foundation.

---

[15]Illustrative of the legislature's power by curative act to modify or annul public rights and obligations is State ex rel. Skyllingstad v. Gunn, 92 Minn. 436, 100 N. W. 97.

[16]State ex rel. Hunt v. City of Montevideo, 142 Minn. 157, 171 N. W. 314; Joslin Co. v. Providence, 262 U. S. 668, 43 S. Ct. 684, 67 L. ed. 1167; Rindge Co. v. Los Angeles, 262 U. S. 700, 43 S. Ct. 689, 67 L. ed. 1186.

[17]Vorbeck v. City of Glencoe, 206 Minn. 180, 288 N. W. 4.

Plaintiffs next challenge the constitutionality of L. 1957, c. 275, on the ground that it grants an arbitrary discretion for the expenditure of public funds since the master plan adopted by the commission contemplates the construction of a building or buildings for the Northwest Airlines, Inc., a private corporation. This constitutional objection ignores certain basic facts. In the first place any building or other facilities erected for the Northwest Airlines, Inc., will become the sole property of the commission. Secondly, such buildings will be leased on a basis of rents sufficient to make the investment, and any bonds issued to finance the same, self-liquidating over the useful life of the buildings as provided for under § 360.117, subd. 4, as amended by L. 1957, c. 435. This statutory authorization for internal improvements, inclusive of providing facilities for major airlines to be paid for out of rental earnings is, in the light of the needs of a modern metropolitan airport, a proper exercise of the police power and no violation of the constitution is involved. Strictly speaking, we are here concerned only with the validity of c. 275 insofar as it pertains to the issue of the need for a public hearing. In other words, c. 275 (§ 360.124, subd. 2) validates the master plan adopted by the commission only to the extent of healing any defect based on a lack of a public hearing, and any question as to the proper expenditure of public funds remains undetermined. It follows that, if the commission authorizes a wrongful expenditure of public funds under the master plan or otherwise, the issue may be raised in a proper action.

It is finally asserted that L. 1957, c. 275, should be declared unconstitutional and void because of vagueness in the scope of its application. Plaintiffs assert that the statutory language is so broad that it validates all plans ever considered by the commission for the improvement of Wold Chamberlain and that the statute provides no means of ascertaining which of the plans are validated. The question of which plan the legislature intended to validate is merely one of identity. See, Otoe County v. Baldwin, 111 U. S. 1, 14, 4 S. Ct. 265, 272, 28 L. ed. 331, 336. The record clearly indicates that only one plan (the master plan) for internal improvements was *adopted* by the commission and that this particular plan so adopted was the only one considered by both the trial court and the legislature. The fact that there were several other plans,

which the commission at one time or another considered *but never adopted,* cannot be used as a basis for importing into the statute a vagueness which makes it appear impossible to ascertain the scope of the statute. Obviously, the enactment of c. 275 did not of itself reactivate prior plans which had been considered but not adopted by the commission. The challenge on the ground of vagueness is without merit.

Since no private rights are here involved, many of the subordinate questions raised by plaintiffs need not be considered. We have, however, carefully considered all basic and relevant issues. Obviously, since the 1957 amendment of § 360.124 is controlling, it becomes unnecessary to determine whether the trial court erred in its interpretation and application of § 360.124 as that section read at the time of the trial court's decision.

The judgments appealed from are reversed.

Reversed.

MR. CHIEF JUSTICE DELL took no part in the consideration or decision of this case.