This opinion will be unpublished and
 may not be cited except as provided by
 Minn. Stat. § 480A.08, subd. 3 (2014).

 STATE OF MINNESOTA
 IN COURT OF APPEALS
 A16-0157

 In the Matter of Temphy Thompson’s Verified Application for
 Compensation from the Contractor Recovery Fund.

 Filed November 21, 2016
 Affirmed
 Reilly, Judge

 Minnesota Department of Labor and Industry
 File No. OAH #60-1903-32840

Temphy Thompson, Brooklyn Park, Minnesota (pro se relator)

Lori Swanson, Attorney General, Sarah L. Krans, Assistant Attorney General, St. Paul,
Minnesota (for respondent Commissioner of Minnesota Department of Labor and Industry)

 Considered and decided by Reilly, Presiding Judge; Halbrooks, Judge; and Johnson,

Judge.

 UNPUBLISHED OPINION

REILLY, Judge

 Relator Temphy Thompson challenges the administrative-law judge’s (the ALJ)

order granting summary disposition, arguing she is an “owner” eligible for compensation

from the Minnesota Contractor Recovery Fund (the Fund) under Minn. Stat. § 326B.89

(2014). In her well-briefed pro se appeal, Thompson argues the ALJ erred in applying the

statutory definition in effect when she applied for payment, rather than the definition in

effect when the underlying events giving rise to her claim occurred. Finally, relator asks
this court to consider the legislative intent in establishing the Fund and argues that applying

the statute to deny recovery is poor public policy. Because we determine that Thompson

is not an “owner” as defined by the statute and that the ALJ properly applied the statute in

effect at the time Thompson applied for compensation, we affirm.

 FACTS

 The facts in this case are undisputed. Thompson purchased residential real property

located in Minneapolis (the property) and personally occupied the property from 1998 to

2006. Thompson leased the property from 2006 until April 2011, when a fire damaged the

property. In September 2011, Thompson contracted with Loyal Home Improvements, LLC

(Loyal), a licensed Minnesota building contractor, to restore the property. Loyal failed to

complete the project. On September 6, 2012, Thompson commenced an action against

Loyal for breach of contract, among other claims. Shortly thereafter, the district court

stayed the proceedings pending Loyal’s Chapter 7 bankruptcy filing. On March 6, 2013,

the bankruptcy court lifted the stay. Thompson then sought a final judgment against Loyal.

 The district court ordered and entered default judgment against Loyal in June 2014

in the amount of $31,663.04. On June 3, 2015, Thompson applied to the Fund for the total

amount of the default judgment. The commissioner of the department of labor and industry

(the commissioner) denied Thompson’s application, concluding that she is not an “owner”

eligible for compensation under the statute.

 Thompson appealed this decision to the Office of Administrative Hearings, arguing

that she is an owner eligible for compensation under the statute and the commissioner erred

in applying the statutory definition in effect when she applied for payment, among other

 2
claims. The department of labor and industry (the DOLI) moved for summary disposition,

which the ALJ granted.1

 This appeal followed.

 DECISION

 Thompson appeals the ALJ’s summary-disposition order arguing that (1) the ALJ

erred in determining that she was not an “owner” eligible for compensation from the Fund

and (2) improperly applied the statutory definition in effect at the time she applied for

compensation. “Summary disposition is the administrative law equivalent of summary

judgment.” Pietsch v. Minn. Bd. of Chiropractic Exam’rs, 683 N.W.2d 303, 306

(Minn. 2004); (citing Minn. R. 1400.5500(K) (2014)). When an administrative agency

grants summary disposition after applying the law to undisputed facts, we review the legal

conclusion de novo. See id. at 303 (citing Lefto v. Hoggsbreath Enters., Inc., 581 N.W.2d

855, 856 (Minn. 1998)). On certiorari appeal of the commissioner’s final order, we may

affirm, modify, remand, or reverse “the decision if the substantial rights of the petitioners

may have been prejudiced because the administrative finding, inferences, conclusion, or

decisions” are in excess of the statutory authority. Minn. Stat. § 14.69(b) (2014).

 Statutory interpretation is a question of law subject to de novo review. Metro. Sports

Facilities Comm’n v. County of Hennepin, 561 N.W.2d 513, 515 (Minn. 1997). “The

object of all interpretation and construction of laws is to ascertain and effectuate the

intention of the legislature.” Minn. Stat. § 645.16 (2014). If the words in a statute are clear

1
 By statute, the ALJ’s order is the final decision of the DOLI. Minn. Stat. § 326B.89,
subd. 8 (2014).

 3
and unambiguous, the court must give effect to the plain meaning of the language. Tuma

v. Comm’r of Econ. Sec., 386 N.W.2d 702, 706 (Minn. 1986). This court construes a

“statute to effect its essential purpose but we do not disregard the clear language of a statute

. . . to pursue the spirit of the law.” Eischen Cabinet Co. v. Hildebrandt, 683 N.W.2d 813,

815 (Minn. 2004).

 I. Thompson was not an “owner” as defined by the statute.

 Thompson argues the ALJ erred in determining she was not an “owner” eligible to

receive compensation from the Fund. We disagree.

 In 1993, the Minnesota Legislature established the Fund. Minn. Stat. § 326.975

(Supp. 1993).2 The purpose of the Fund is to compensate residential real property owners

who suffer direct and out-of-pocket loss due to fraudulent or deceptive practices,

conversion of funds, or failure of performance by licensed residential building contractors.

Minn. Stat. § 326B.89, subd. 4 (2014). Recovery from the Fund is limited to owners and

lessees of real property. Id., subd. 4(1). “Owner,” as defined by the current version of the

statute, means any “person who has a legal or equitable interest in real property,” but does

not include “any real estate developer or any owner using, or intending to use, the property

for a business purpose and not as owner-occupied residential real estate.” Id., subd. 1(f)

(2014) (emphasis added).

2
 The Minnesota Legislature repealed the Fund’s original enabling legislation and
recodified the statute at Minn. Stat. § 326B.89. 2007 Minn. Laws ch. 140, art. 8, § 28,
(codified at Minn. Stat. § 326B.89 (Supp. 2007)). Sections 1, 3, and 15 took effect on
July 1, 2007; the remaining sections took effect on December 1, 2007. Id.

 4
 While the statute does not define “business purpose,” Thompson concedes that her

use of the property as rental property constitutes a “business purpose.” We agree. The

Minnesota Legislature and courts use the term in a consistent manner. Westley v. Mann,

896 F. Supp. 2d 775, 804 (D. Minn. 2012) (“[L]oans obtained to purchase non-owner

occupied rental property are for a ‘business purpose.’”); see also Minn. Stat. § 47.59, subd.

1(d) (2014) (“‘Business purpose’ means a purpose other than a personal, family, household,

or agricultural purpose.”).

 In its order granting the DOLI’s motion for summary disposition, the ALJ properly

determined “[Thompson], by renting, rather than occupying the property, uses it ‘for a

business purpose.’” Because it is undisputed that Thompson uses the property as rental

property, she is not an eligible “owner” as defined by the statute and is unable to receive

compensation from the Fund.

 II. “Owner” is defined by the statute in effect at the time the applicant applied
 for compensation.

 Thompson also argues the current statutory definition of “owner” does not apply to

her application because the Minnesota Legislature amended the definition in 2013, after

she commenced her lawsuit against Loyal. Therefore, she argues the ALJ retroactively

applied the statute and this retroactive application was improper. Thompson’s argument is

misplaced.

 A statute is presumptively not retroactive. Minn. Stat. § 645.21 (2014). “No law

shall be construed to be retroactive unless clearly and manifestly so intended by the

legislature.” Id. To have a retroactive effect, the language of the statute must “contain

 5
clear evidence of retroactive intent,” such as inclusion of the word “retroactive.” Sletto v.

Wesley Constr., Inc., 733 N.W.2d 838, 842 (Minn. App. 2007) (citations omitted).

“Generally, it is immaterial in this state whether a law alters procedural or substantive

rights; the legislature must still express its intention to make it retroactive.” In re Estate of

Murphy v. State, 293 Minn. 298, 308, 198 N.W.2d 570, 576 (1972). Retroactivity of a

statute is a question of law, which we review de novo. Gomon v. Northland Family

Physicians, Ltd., 645 N.W.2d 413, 415-16 (Minn. 2002).

 Prior to the 2013 amendment, Minn. Stat. § 326B.89 defined an “owner” of real

property as “a person who has any legal or equitable interest in real property and includes

a condominium or townhome association that owns common property located in a

condominium building or townhome building or an associated attached garage. Owner

does not include any real estate developer.” Minn. Stat. § 326.89, subd. 1(f) (2012). In

2013, the Minnesota Legislature amended the last sentence, clarifying that the term owner

“does not include any real estate developer or any owner using, or intending to use, the

property for a business purpose and not as owner-occupied residential real estate.” 2013

Minn. Laws ch. 85, art. 2, § 35, (codified at Minn. Stat. § 326B.89, subd. 1(f) (Supp. 2013)

(emphasis added)). This amendment took effect on August 1, 2013, and applies to all

applications filed on or after that date. Id. Because Thompson applied to the Fund in 2015,

the ALJ’s reliance on the 2013 amendment did not give the statute retroactive effect.

 A. The 2013 statutory definition of “owner” governs Thompson’s application.

 As a threshold matter, Thompson was ineligible to receive compensation from the

Fund until she submitted a verified application. Minn. Stat. § 326B.89, subd. 5 (2014)

 6
(“The commissioner shall only pay compensation from the fund for a final judgment that

is based on a contract directly between the licensee and the homeowner . . . .” (emphasis

added)). As part of the verified application, an owner or lessee must first obtain a “final

judgment in a court of competent jurisdiction against a [licensed residential building

contractor].” Id., subd. 6(2). Therefore, Thompson only became potentially eligible to

receive compensation from the Fund when she obtained a final judgment and submitted a

verified application; her eligibility did not accrue when she discovered Loyal’s misconduct.

 In this case, the district court did not enter final judgment against Loyal until June

2014—almost one year after the Minnesota Legislature amended the statutory definition

of “owner.” Thompson did not submit her verified application until June 2015—almost

two years after the amendment took effect. Even if Thompson had submitted her

application immediately following the district court’s entry of default judgment against

Loyal, the 2013 amendment would still govern her application. And Thompson would

have been ineligible to receive compensation from the Fund.

 B. Thompson did not have a vested right to recover from the Fund.

 Thompson nevertheless argues that she is entitled to receive compensation from the

Fund because her eligibility accrued upon her discovery of Loyal’s misconduct. Relying

on Sletto, in which this court applied the vested rights theory to determine appellants’

statutory-warranty claim accrued when “the homeowner discovers, or should have

discovered, the builder’s refusal or inability to ensure the home is free from major

construction defects,” 733 N.W.2d at 843 (citing Vlahos v. R&I Const. of Bloomington,

 7
Inc., 676 N.W.2d 672, 678 (Minn. 2004)), Thompson argues her right to receive

compensation accrued upon discovery of Loyal’s failure to perform.

 “Under the vested rights theory, an application of a statute is retroactive if it impairs

rights that vested before the effective date of the statute.” Sletto, 733 N.W.2d at 845. The

Fourteenth Amendment prohibits retroactive legislation when the legislation divests a

vested right. Application of Q Petroleum, 498 N.W.2d 772, 782 (Minn. App. 1993). A

right is vested when “it is something more than a mere expectation, based on an anticipated

continuance of present laws. It must be some right or interest in property that has become

fixed or established and is not open to doubt or controversy.” Olsen v. Special Sch. Dist.

No. 1, 427 N.W.2d 707, 711 (Minn. App. 1988) (quotations omitted).

 In addressing the issue of amendatory legislation and vested rights, the Minnesota

Supreme Court clarified:

 When the legislature changes the law while a case is pending,
 but prior to the rendition of judgment, the court may not
 perpetrate the old law but must apply the new. There is no
 vested right in an existing law nor in an action until final
 judgment has been entered therein.

Holen v. Minneapolis–St. Paul Metro. Airports Comm’n, 250 Minn. 130, 137, 84 N.W.2d

282, 287 (1957). In this case, Thompson had no right to reimbursement from the Fund

until she received a final judgment against Loyal and submitted a verified application.

Because Thompson’s eligibility to receive compensation under the statute did not accrue

until after the effective date of the amendment, she did not have a vested right to recover

from the Fund.

 8
 III. The Legislature intended the 2013 amendment to exclude individual rental
 property owners.

 Thompson also asks this court to examine legislative intent, arguing “[i]n [her]

research of legislative history, [Thompson] found that the legislature intended to revise the

definition of owner to be ‘owners of real property that are individual owners.’ There was

no mention during the 2013 Senate and House legislative hearings that the property had to

be owner-occupied.” We disagree.

 The object of statutory interpretation “is to ascertain and effectuate the intention of

the legislature.” Minn. Stat. § 645.16. “When the language of a statute is plain and

unambiguous, it is assumed to manifest legislative intent and must be given effect.”

Burkstrand v. Burkstrand, 632 N.W.2d 206, 210 (Minn. 2001). If statutory language is

ambiguous, “we may look to other sources to ascertain legislative intent.” Minn. Stat.

§ 645.16. “An ambiguity exists only where a statute’s language is subject to more than

one reasonable interpretation.” State v. Mauer, 741 N.W.2d 107, 111 (Minn. 2007).

 Here, the language of the statute is plain and unambiguous. Minn. Stat. § 326B.89,

subd. 1(f), states in clear and unequivocal language: “‘Owner’ when used in connection

with real property, means a person who has any legal or equitable interest in real property

. . . Owner does not include any real estate developer or any owner using, or intending to

use, the property for a business purpose and not as owner-occupied residential real estate.”

Id. (emphasis added). Because the statute states the owner-occupied requirement in plain

and unambiguous language, we must give effect to this provision and will not look beyond

the language to determine the intent of the legislature.

 9
 IV. Thompson’s public policy arguments are not properly before this court.

 Finally, Thompson argues that applying the statute to her application to deny

compensation is poor public policy. Notably, Thompson questions the “message” this

sends to the public, stating:

 Homeowners would assume that their right to the Fund would
 begin once they have signed a contract with a licensed
 contractor. . . . [T]he purpose of the Fund . . . [is] to compensate
 homeowners who have suffered losses due to a licensed
 contractor’s fraudulent, deceptive or dishonest practices,
 conversion of funds or failure to perform.

 ....

 As a homeowner, wh[o] relied on certain rights to protect
 [herself], this decision is concerning for prospective Fund
 applicants. This shows that the Fund is more concerned with
 the date [] a consumer submits their application than with the
 facts surrounding the dates when the misconduct of a licensed
 contractor occurred. [This] negates the purpose of the Fund to
 compensate owners of residential property in MN who have
 suffered a loss due to a licensed contractor’s failure to perform.
 . . . This also sends a negative message to prospective Fund
 applicants that it may not be worth the risk of starting what
 could be a lengthy, costly litigation process when seeking
 recovery from the Fund[] because an amendment could pass
 causing ineligibility.

 We empathize with Thompson. We regret that Loyal failed to satisfy its contractual

obligations, filed Chapter 7 bankruptcy proceedings thereby staying Thompson’s state

court contract action, and left Thompson to shoulder the costs of restoring the property.

But we may not examine her public policy arguments. When we review a statute, we are

limited to “interpret[ing] the policy that the Legislature has already determined in the

statutory language at issue.” In re Guardianship of Tschumy, 853 N.W.2d 728, 741 n.10

 10
(Minn. 2014). Because in cases involving unambiguous statutory construction we are

limited to “correcting errors,” we may not create public policy. LaChapelle v. Mitten, 607

N.W.2d 151, 159 (Minn. App. 2000), review denied (Minn. 2000).

 We therefore conclude the district court properly determined Thompson is not an

“owner” eligible for compensation from the Fund and did not err in applying the statutory

definition of “owner” in effect at the time she applied for compensation.

 Affirmed.

 11