STATE of Minnesota, Appellant,

v.

Kory Ken BUNDE (CX–96–1302), Jeremy William Francis (C1–96–1303), Respondents.

Nos. CX–96–1302, C1–96–1303.

Court of Appeals of Minnesota.

Dec. 10, 1996.

Hubert H. Humphrey III, Attorney General, St. Paul, for Appellant.

Larry M. Collins, Waseca County Attorney, Waseca, for Appellant.

Kevin D. Riha, Waseca, for Respondents.

Considered and decided by RANDALL, P.J., and SHORT and DAVIES, JJ.

## OPINION

DAVIES, Judge.

The district court granted separate motions by respondents Kory Ken Bunde and Jeremy William Francis for dismissal of driving-under-the-influence charges. Each respondent asked for dismissal on the ground that the arresting officer did not have authority to make arrests outside his municipality. On appeal, the State argues that respondent Bunde waived the right to object to the validity of his arrest and that the arresting officer had authority to make both arrests. We reverse and remand.

## FACTS

Respondents were arrested in separate incidents by Janesville Police Officer Allen Anderson. On both occasions, although outside the Janesville city limits, Anderson was on duty, wore his police uniform, and drove a marked squad car. The State moved for reconsideration of the orders dismissing the charges against respondents. The district court denied both motions and these appeals followed.

## ISSUES

I.  Did respondent Bunde waive the issue of whether Anderson had authority to arrest him outside the municipality employing Anderson?

II.  Did the district court err in ruling that Francis's arrest was unauthorized under Minn.Stat. § 629.40?

III.  Did the district court err in ruling that Bunde's arrest was unauthorized under Minn.Stat. § 629.40?

## ANALYSIS

A reviewing court in a pretrial appeal will reverse a district court's dismissal of charges only if the State clearly and unequivocally shows that the district court erred in its judgment, and that the error, unless reversed, will have a critical impact on the outcome of the prosecution. *State v. Joon Kyu Kim,* 398 N.W.2d 544, 547 (Minn. 1987). Respondents do not dispute that the district court's rulings (that Anderson lacked authority to arrest respondents) provide the requisite critical impact because they led to dismissal of the charges against them. A district court's application of statutory criteria to the facts found is a question of law that we review de novo. *State v. Favors,* 482 N.W.2d 226, 227 (Minn.App.1992), *review denied* (Minn. Mar. 26, 1992).

### I.

The State argues that the district court should not have considered whether Anderson exceeded his authority in arresting Bunde because Bunde waived this defense by not timely pleading it. Bunde did not argue in his pretrial motion that Anderson exceeded his authority in arresting him. It appears, therefore, that Bunde waived this defense. *See* Minn.R.Crim.P. 10.03 (failure to raise by pretrial motion a defense available to moving party constitutes waiver).

Rule 10.03 further provides, however, that a "court for good cause shown may grant relief from the waiver." The trial court reached the waiver issue and, in the interest of judicial economy, we will presume that the district court concluded that Bunde had shown good cause to justify relief from the

waiver and was within its discretion in so ruling.

## II.

The State argues that the district court erred in ruling Francis's arrest invalid because, although Anderson made the arrest outside his municipality, he did so in the course and scope of his employment. Minn. Stat. § 629.40, subd. 3 (1994), provides:

**Authority for out of jurisdiction arrests.** When a [licensed police officer] * * * *in the course and scope of employment* ·* * * is outside of the [officer's] jurisdiction, *the [officer] is serving in the regular line of duty as fully as though the service was within the [officer's] jurisdiction.*

(Emphasis added.)

In *State v. Tilleskjor*, 491 N.W.2d 893, 894 (Minn.1992), the only case in which the Minnesota Supreme Court has addressed the breadth of the "course and scope of employment" language of the statute, a police officer saw the defendant brake "suddenly or abruptly" while inside the officer's jurisdiction. The officer followed the defendant outside the jurisdiction and there observed the defendant's car weave within its lane. *Id.* He then stopped the defendant and subsequently arrested him for DWI. *Id.*

The supreme court, reversing this court, upheld the arrest as being authorized under Minn.Stat. § 629.40, subd. 3, ruling that the officer had acted in the course and scope of employment, even though he followed the defendant to a place outside the officer's jurisdiction.

■ Here, on the night Anderson arrested Francis, Anderson was on duty, wearing his uniform, and driving a marked squad car. Without activating his overhead lights, Anderson followed a speeding car from within Janesville to approximately three miles outside the city. There, another car drew Anderson's attention. He stopped following the first car and began to watch this second car, driven by Francis.

Anderson saw Francis turn without signaling and later weave over the center line. When Anderson pulled Francis over—still outside Janesville—he noticed that Francis had bloodshot eyes and slurred speech, and that his car smelled of marijuana. Anderson arrested Francis for driving under the influence of a controlled substance. On this record, we hold that Anderson, although outside his municipality when he arrested Francis, was nonetheless—under *Tilleskjor*—in the course and scope of his employment and with authority to arrest.

Francis asks this court to adopt a more narrow interpretation of *Tilleskjor*, limiting its application to cases in which the arresting officer first observes the defendant within the officer's jurisdiction, as in *Tilleskjor* itself. We decline to read *Tilleskjor* as being so limited. In *Tilleskjor*, the supreme court did not rest its decision on the fact that the arresting officer first observed the defendant within the officer's jurisdiction. Rather, the supreme court added emphasis to the statute, just as we have above, and then stated:

We hold that the statute, which is without ambiguity, clearly gave the officer all the authority he needed to act as he did.

*Id.*

■ We must therefore read the statute (if it is to be read so as to avoid ambiguity) as authorizing on-duty police officers to operate free from the limitations of their city borders when the policing mission itself commences within the city—regardless of where they first observe a defendant.

## III.

The State also contends that Bunde's arrest was valid. Anderson arrested respondent Bunde at approximately 1:00 a.m. Before encountering Bunde, while patrolling approximately three miles outside Janesville, Anderson saw a car run a stop sign. While following that car, Anderson noticed a driver, Bunde, lying back in the driver's seat· of a car parked on the side of the road.

When Anderson stopped to investigate Bunde, he saw a case of beer and an open bottle of rum in the car, and noted that the interior of the car smelled of alcohol. In response to Anderson's questions, Bunde said he was 18 years old, had drunk six or seven cans of beer, and that he had thought

he was "all right to drive," but once he had started driving "knew [he] wasn't." After Bunde failed some field sobriety tests and a preliminary breath test, Anderson arrested him for driving under the influence of alcohol.

■ The record does not indicate why Anderson was patrolling outside Janesville when he spotted the first car (or Bunde), but the State's affidavits show that Janesville officers regularly patrol outside the city. We feel bound by *Tilleskjor* to read the statute as requiring a holding that Anderson acted lawfully in the course and scope of his employment when he arrested Bunde, even though he was outside his municipality at the time—and even though, as the dissent notes, his mission also commenced outside that jurisdiction.

We hold that the district court erred in ruling that respondent Bunde's arrest was unauthorized under Minn.Stat. § 629.40, subd. 3.

## IV.

Because we have determined that Anderson validly arrested Francis and Bunde in the course and scope of his employment, we decline to address the State's arguments that Anderson made valid "fresh pursuit" or "citizen's" arrests of respondents or that the State should be permitted to prosecute the charges against Bunde on evidence obtained before his arrest.

## DECISION

The district court erred in ruling that Officer Anderson lacked authority to arrest respondents. This error critically impacted the outcome of respondents' cases. Anderson arrested respondents while outside Janesville, but in the course and scope of his Janesville employment within the meaning of Minn.Stat. § 629.40, subd. 3. He made the arrests while on duty, in uniform, driving a marked squad car, and consistent with the regular practice of the Janesville police.

**Reversed and remanded.**

RANDALL, Judge (concurring in part, dissenting in part).

I respectfully concur in part and dissent in part.

I concur in the result reached by the majority as to appellant Jeremy Francis. With Francis, the officer began to pursue a speeding car being driven within Janesville, and he followed that car to approximately three miles outside the city. Thus, he was working on an offense that had started in his jurisdiction and he had every right to follow it outside his jurisdiction. Then, another car driven by Francis caught his eye, and while watching the Francis vehicle, he noticed it turned without signaling and later crossed over the center line. With the low level of proof we have assigned to "articulable suspicion," I agree with the majority there was a valid stop of the Francis vehicle. Since the officer had started to follow a speeding car within the City of Janesville, he was, by definition, still in the normal scope and business of his employment when he spotted Francis. These facts bring the case close enough to the Minnesota Supreme Court's opinion in *State v. Tilleskjor*, 491 N.W.2d 893, 894 (Minn.1992).

I respectfully dissent as to appellant Kory Bunde. I disagree with the majority's reasoning that "[i]n *Tilleskjor*, the supreme court did not rest its decision on the fact that the arresting officer first observed the defendant within the officer's jurisdiction [and that w]e must therefore read the statute * * * as authorizing on-duty police officers to operate free from the limitations of their city borders when the policing mission itself commences within the city—regardless of where they first observe a defendant."

Set that statement out by itself and examine it:

We must therefore read the statute * * * as authorizing on-duty police officers to operate free from the limitations of their city borders when the policing mission itself commences within the city—regardless of where they first observe a defendant.

Stated simply, I would need the supreme court of a state or the United States Supreme Court to make that blanket statement,

and then explicitly state that that blanket statement stands by itself with no modifications or qualifications, before I would believe it to be the law. **Every single case** that I have found involving city police officers, with their defined territorial limits, that has upheld investigations, chases, arrests, search and seizure, etc., outside the limits of their city has **always** included some facts showing the officer to be within the normal scope and course of employment. Fresh or hot pursuit is a common example. Another is the investigation of a case that started within the city limits, within the officer's jurisdiction, and then that led to investigation, interviews with potential witnesses, etc., who lived outside the city limits. Other recognized exceptions would be emergency calls from the state highway patrol or the county sheriff's office to all neighboring city policemen in the vicinity to help out with a high-speed chase or other investigation in the area, but outside city limits. There are documented instances of city officers being asked by other law enforcement agencies to act as "backup" outside the city limits. But I find no case, not even *Tilleskjor*, that says for all blanket purposes, on-duty city police officers have a blanket permission to "operate free from the limitations of their city borders" regardless of the underlying supporting facts.

The *Tilleskjor* court did not decide whether an officer outside his jurisdiction for no apparent reason could arrest a suspect first seen by the officer outside his jurisdiction. That issue was not before the *Tilleskjor* court. That *is* the issue facing this court in Bunde's case. You see, as the majority correctly points, when Officer Anderson came across Bunde, the facts gave zero rise to any inference that he was on official business outside the jurisdiction. There is no explanation in the record as to why a city police officer from Janesville was roaming around outside of town when he first began to follow a car that had run a stop sign three miles outside town, and while doing so, noticed Bunde "asleep or passed out" in a parked car. Thus, unlike the facts in Francis, where the officer legitimately started out in town, legitimately continued out of town, and legitimately spotted at least some definable articulable suspicion, with Bunde, the officer did

not start in his jurisdiction and the record shows no explanation as to what he was doing outside his jurisdiction as he moved around keeping the county safe from cars that went through stop signs.

The majority correctly points out that the *Tilleskjor* court did not base its holding on the fact that the arresting officer in that case began to pursue the defendant while inside the officer's jurisdiction. But I cannot ignore the factual context of *Tilleskjor*. The fact is, the arresting officer in *Tilleskjor* began to pursue the defendant inside the officer's jurisdiction and then arrested the defendant outside the jurisdiction based on conduct that may or may not have occurred outside the jurisdiction. That the criminal conduct may or may not have occurred outside that officer's jurisdiction is of no consequence. He properly started his pursuit based on suspected criminal conduct inside his jurisdiction. That is a long recognized and accepted exception.

Here, in contrast, Anderson did not observe Bunde until the two were three miles outside Janesville. The arrest was based solely on Anderson's observations of Bunde outside Janesville. Anderson did not see Bunde while in Janesville and then follow him across the Janesville city limits. Anderson did not even follow another suspect out of Janesville, as he did with Francis, leading him to encounter Francis clothed with at least an ostensible aura of authority. With Bunde, unlike *Tilleskjor*, no one knows why Anderson was outside his jurisdiction when he first observed Bunde. These facts do not support a finding that when he arrested Bunde, Anderson was outside his jurisdiction in the course and scope of his employment. I can understand why the trial court struggled with the facts in these two cases and denied jurisdiction to the state in both instances. The facts as to Francis are close. Although I concur with the majority as to Francis, lower than that I cannot go. I conclude the trial court acted properly when it dismissed the case against appellant Bunde.

Accordingly, in light of the fact that Anderson did not articulate a reason for roaming outside his jurisdiction when he first

saw Bunde, I find the trial court acted properly when it dismissed the charge against Bunde based on lack of jurisdiction by the arresting officer.