**STATE of Minnesota, Respondent,**

v.

**Ahmed Ali AHMED, Appellant (A10–806),**

**Yusof Mohamed Adam, Appellant (A10–1156).**

**Nos. A10–806, A10–1156.**

Court of Appeals of Minnesota.

Nov. 23, 2010.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, J. Michael Richardson, Paul R. Scoggin, Sarah H. Stennes, Assistant County Attorneys, Minneapolis, MN, for respondent.

Michael C. Hager, Minneapolis, MN, for appellant Ahmed.

Robert G. Davis, Jr., Minneapolis, MN, for appellant Adam.

Considered and decided by STONEBURNER, Presiding Judge; BJORKMAN, Judge; and HARTEN, Judge.

## OPINION

HARTEN, Judge.*

Appellants were each charged with fifth-degree controlled substance crime. They moved to dismiss the charges on the ground that the substance in their possession was not a controlled substance; their motions were denied. Each appellant then waived his right to a jury trial and submitted his case on stipulated facts to the district court, which found each of them guilty. They now challenge their convictions in appeals that were consolidated for hearing by this court. Because we see no error in the district court finding that appellants are guilty as charged, we affirm.

## FACTS

Khat and its dried form, graba, are green plant substances commonly ingested by chewing; they often contain cathinone or cathine. In February 2009, police executing a search warrant for the residence of appellants, Ahmed Ali Ahmed and Yusof Mohamed Adam, found them at a table packaging a green leafy substance that appeared to be khat or graba. When their mouths were examined, police found remnants of a leafy substance and noted that their tongues were green. The police also

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

found that Adam's trouser pocket contained a wad of cash totaling $1,730 and a package of what looked like khat or graba and that Ahmed's trouser pocket contained a wad of cash totaling $2,560. They arrested both appellants.

The green leafy substance being packaged in 15 plastic sandwich bags was later determined to weigh about three and a half pounds. The police also found a digital postal scale, unopened sandwich bags, and aluminum foil. Chemical testing determined that the leafy substance contained cathinone, a Schedule I controlled substance.

## ISSUE

Did the district court err in convicting appellants of fifth-degree controlled substance crime based on their possession of khat?

## ANALYSIS

The district court's application of statutory criteria to the facts is a question of law subject to de novo review. *State v. Bunde,* 556 N.W.2d 917, 918 (Minn.App. 1996).

■ A person who "unlawfully possesses one or more mixtures containing a controlled substance classified in schedule I" is guilty of fifth-degree controlled substance crime. Minn.Stat. § 152.025, subd. 2(1) (2008). Schedule I includes "any material[,] compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system ...: Cathinone; Methcathinone." Minn.Stat. § 152.02, subd. 2(6) (2008).[1]

■ Appellants assert that Minn.Stat. § 152.02, subd. 2(6), does not pertain to the cathinone present in khat plants because the statute prohibits possession of any "mixtures containing a controlled substance classified in schedule I" and khat, a plant, is not a mixture. A "mixture" in this context is defined as "a preparation, compound, mixture, or substance containing a controlled substance, regardless of purity." Minn.Stat. § 152.01, subd. 9a (2008). A substance is defined as anything that has mass and occupies space. *See State v. Peck,* 773 N.W.2d 768, 771 (Minn. 2009) (adopting this definition from The American Heritage Dictionary 1726 (4th ed.2000)). Obviously, the khat plants have mass and occupy space; they are a substance and thus a mixture within the meaning of Minn.Stat. § 152.01, subd. 9a. Appellants therefore possessed a mixture containing cathinone, a schedule I substance, and were guilty of fifth-degree controlled-substance crime. *See* Minn.Stat. § 152.02, subd. 2(6); Minn.Stat. § 152.025, subd. 2(1).

■ Moreover, schedule I includes any "material, compound, mixture, or preparation" containing any quantity of cathinone. Minn.Stat. § 152.02, subd. 2(6). "Material" is defined as "of or relating to matter;

1. The comma that appears seven times in this statute after "material" in the phrase "material, compound, mixture, or preparation," *see* Minn.Stat. § 152.02, subd. 2(3), subd. 3(3), (4), subd. 4(1), (2), (3), and (5) (2008), was omitted from Minn.Stat. § 152.02, subds. 2(5) and (6) (2008). Because there is no logical, contextual, or grammatical reason for its omission, we assume the omission was inadvertent. While this court generally may not supply what the legislature inadvertently omits from a statute, *see Ullom v. Indep. Sch. Dist. No. 112,* 515 N.W.2d 615, 617 (Minn. App.1994), it may add words or phrases when necessary to its interpretation if they "do not conflict with its obvious purpose and intent nor in any way affect its scope and operation." Minn.Stat. § 645.18 (2008). For the purposes of this opinion, we add the comma between material and compound omitted from Minn.Stat. § 152.02, subd. 2(6).

physical." *Black's Law Dictionary* 998 (8th ed.2004). A plant is matter. Thus, khat, a material containing cathinone, is a schedule I substance.[2]

"This court has previously addressed the issue of whether possessing khat is criminal. In *State v. Ali* [613 N.W.2d 796, 797 (Minn.App.2000), *review denied* (Minn. 13 Sept. 2000) (*Ali I*)], we stated that 'khat ... contains cathine and cathinone, both controlled substances under Minnesota law.' " *State v. Ali,* 775 N.W.2d 914, 921 (Minn.App.2009) (*Ali II*). Appellants argue that *Ali I* and *Ali II*, both upholding khat convictions, are inapplicable because "Minnesota courts are not authorized to overreach their powers to legislate the Minnesota controlled substance laws." But appellants do not explain how the *Ali* cases "overreached" by applying established statutory law.[3]

Appellants concede that *Ali I* "has not yet been expressly overruled" in light of *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal,* 546 U.S. 418, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006), but imply that the *Ali* cases violate Supreme Court precedent set forth in *Gonzales.* But the issue in *Gonzales* was whether, under the 1993 Religious Freedom Restoration Act (RFRA), a religious sect whose observances involved a drink brewed from plants containing a hallucinogen and thus violated the Controlled Substances Act (CSA) could obtain a preliminary injunction against enforcement of the CSA; the Supreme Court affirmed the preliminary injunction. *Id.* at 423, 126 S.Ct. at 1216. Thus, *Gonzales* is distinguishable on its facts. Moreover, *Gonzales* notes that the RFRA does not apply to the states. *Id.* at 424, 126 S.Ct. at 1217 n. 1. The RFRA has no application here.

Additionally, *Gonzales* does not address the issue of whether a plant can be a controlled substance, because it concerns a drink brewed from a plant, not the plant itself. "To the extent the commentary [i.e., the U.N. Commentary on the Convention on Psychotropic Substances 387, 385 (1976) ] suggests plants themselves are not covered by the Convention, that is of no moment—the [religious sect] seeks to import and use a tea brewed from the plants, not the plants themselves, and the tea plainly qualifies as a 'preparation' under the Convention." *Id.* at 438, 126 S.Ct. at 1224–25. *Gonzales* does not support the proposition that khat is not covered under the Minnesota controlled substance statutes, nor does it provide a basis for overruling the *Ali* cases.

■ Finally, appellants argue that prosecution for the possession of khat violates both the Equal Protection and the Free Exercise of Religion Clauses of the U.S. Constitution.[4] In regard to the Free Ex-

---

2. Neither Minn.Stat. § 152.01, subd. 9a, (defining "mixture") nor Minn.Stat. § 152.02, subd. 2(6) (listing cathinone as a schedule I substance) nor Minn.Stat. § 152.025, subd. 2(1) (criminalizing possession of a mixture containing a schedule I substance) is ambiguous; accordingly, there is no need to resort to the legislative history or various secondary sources appellants discuss. *See State v. Anderson,* 683 N.W.2d 818, 821 (Minn.2004) (holding that, when a law is unambiguous, this court must not engage in any further construction).

3. Appellants cite *U.S. v. Sheikh,* 367 F.3d 756, 764 (8th Cir.2004) (concluding that the Controlled Substance Act's failure to specify khat did not make the act unconstitutionally vague) to show that the "overreaching" is not confined to Minnesota courts, but again fail to explain in what manner the Eighth Circuit overreached.

4. Appellants do not allege a violation of the Minnesota Constitution. The state contends that appellants did not raise the equal protection argument to the district court, but the issue was raised in a motion to dismiss and

ercise Clause, the Supreme Court has "never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Employment Div., Dept. of Human Res. of Or. v. Smith,* 494 U.S. 872, 878–79, 110 S.Ct. 1595, 1600, 108 L.Ed.2d 876 (1990).

> The government's ability to enforce generally applicable prohibitions of socially harmful conduct, like its ability to carry out other aspects of public policy, cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development. To make an individual's obligation to obey such a law contingent upon the law's coincidence with his religious beliefs, except where the State's interest is compelling—permitting him, by virtue of his beliefs, to become a law unto himself, contradicts both tradition and common sense.

*Id.* at 885, 110 S.Ct. at 1603 (quotations and citations omitted). "Because respondents' ingestion of peyote was prohibited under Oregon law, and because that prohibition is constitutional, Oregon may, consistent with the Free Exercise Clause, deny respondents unemployment compensation when their dismissal results from the use of the drug." *Id.* at 890, 110 S.Ct. at 1606. Consequently, appellants' argument that their religious beliefs entitle them to possess and use khat, a controlled substance, fails.

 The federal test for legislation alleged to violate the Equal Protection Clause requires (1) a legitimate purpose for the challenged legislation and (2) a reasonable belief by lawmakers that use of the challenged classification would promote that purpose. *W. & S. Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514

rejected in the denial of that motion. *See*

(1981). Appellants do not argue that there was no legitimate purpose for criminalizing possession of cathinone or that it was unreasonable to believe that criminalizing possession of cathinone would deter its possession. Accordingly, they fail to raise a viable equal protection challenge.

## DECISION

Khat, whether considered a material under Minn.Stat. § 152.02, subd. 2(6), or a mixture under Minn.Stat. § 152.025, subd. 2(1) and Minn.Stat. § 152.01, subd. 9a, contains cathinone, a controlled substance classified in schedule I, the possession of which is prohibited by Minn.Stat. § 152.025, subd. 2(1). Its possession is a fifth-degree controlled substance crime, and appellants were lawfully convicted of that crime.

**Affirmed.**

district court's order of 19 February 2010.