In the MATTER OF the CIVIL COMMITMENT OF: Eugene Phillip KROPP.

A16-1944

Court of Appeals of Minnesota.

Filed April 10, 2017

Review Denied June 20, 2017

Lori Swanson, Attorney General, Aaron Winter, Assistant Attorney General, St. Paul, Minnesota (for appellant commissioner of human services)

Janelle P. Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent Stearns County)

Kathleen A. Heaney, Sherburne County Attorney, Erin O'Toole-Tomczik, Assistant County Attorney, Elk River, Minnesota (for respondent Sherburne County)

Ron Thorsett, Eden Prairie, Minnesota (for respondent Eugene Phillip Kropp)

Considered and decided by Kirk, Presiding Judge; Schellhas, Judge; and Bratvold, Judge.

## OPINION

Kirk, Judge

Appellant, the Minnesota Commissioner of Human Services, challenges the judicial appeal panel's grant of provisional discharge from MSOP to respondent Eugene Phillip Kropp. On appeal, the commissioner argues that the panel erred by: (1) granting provisional discharge to a nonexistent placement, (2) improperly delegating judicial authority to the executive director of MSOP, and (3) concluding that the commissioner failed to show by clear and convincing evidence that provisional discharge should be denied. Because we conclude that the panel did not err, we affirm.

## FACTS

Kropp, who is 74 years old, was civilly committed as a sexually dangerous person and sexual psychopathic personality in 1998. He advanced to MSOP phase III but was moved back to phase II of treatment in 2010 due to his lack of transparency. In 2013, Kropp was transferred to Community Preparation Services (CPS) after successfully petitioning for transfer.

In 2014, Kropp petitioned for a provisional discharge. In March 2015, the special review board (SRB) held a hearing to consider Kropp's petition. The SRB recommended denying provisional discharge because Kropp had only recently re-engaged in treatment, lacked a sustained record of treatment progress, and failed to present a provisional-discharge plan with sufficient specificity. Kropp petitioned for rehearing and reconsideration. In April 2015, Kropp advanced to MSOP phase III.

In January 2016, the judicial appeal panel held a hearing to consider Kropp's petition for rehearing and reconsideration. At the conclusion of Kropp's case in chief, the commissioner of human services moved to dismiss the matter pursuant to Minn. R. Civ. P. 41.02(b), and Sherburne County joined in the motion. The panel denied the motion to dismiss and ordered the executive director of MSOP to develop a provisional-discharge plan in conjunction with Kropp as required by Minn. Stat. § 253D.35, subd. 2 (2016). The order provided that the plan must be filed within 30 days. It stated that the plan "does not need to contain a specific placement if one cannot be identified in this timeframe," but the plan must identify the type of placement that would best meet Kropp's needs and address public safety. The panel remanded the matter to the SRB for consideration of Kropp's provisional-discharge plan and ordered that the matter be set for a phase II hearing before the panel after the SRB issued its findings of fact and recommendation.

A provisional-discharge plan created by MSOP and Kropp was presented to the SRB. In March 2016, the SRB held a

hearing to consider Kropp's renewed request for provisional discharge. After reviewing the evidence before it, the SRB recommended granting Kropp's petition for provisional discharge. The commissioner filed a petition for rehearing and reconsideration.

In October 2016, a phase II hearing was held before the judicial appeal panel. At the hearing, the panel heard testimony from Kropp, an MSOP associate clinical director, a forensic evaluation department supervisor employed by the department of human services, and a court-appointed, independent examiner. Both the MSOP clinical director and the forensic evaluation department supervisor testified that Kropp should not be provisionally discharged. However, Dr. Nadia Donchenko, the court-appointed examiner, supported provisional discharge.

In November 2016, the judicial appeal panel issued an order granting Kropp's petition for provisional discharge. The commissioner of human services now appeals and challenges the panel's November 2016 order.

## ISSUES

I. Did the judicial appeal panel erroneously grant a provisional discharge to a nonexistent placement?

II. Did the judicial appeal panel improperly delegate judicial authority to executive officials at MSOP?

III. Did the judicial appeal panel err in concluding that the commissioner failed to show by clear and convincing evidence that provisional discharge should be denied?

## ANALYSIS

■■■ This court reviews a judicial appeal panel's decision for clear error, examining the record to determine whether the evidence as a whole sustains the panel's findings. *Larson v. Jesson*, 847 N.W.2d 531, 534 (Minn. App. 2014). In this review, we do not reweigh the evidence as if trying the matter de novo. *Id.* If the evidence as a whole sustains the panel's findings, it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary. *Piotter v. Steffen*, 490 N.W.2d 915, 919 (Minn. App. 1992), *review denied* (Minn. Nov. 17, 1992). However, this court reviews de novo questions of statutory construction and the application of statutory criteria to the facts found. *Coker v. Ludeman*, 775 N.W.2d 660, 663 (Minn. App. 2009), *review dismissed* (Minn. Feb. 24, 2010) (dismissing for lack of timely service of petition on respondent's counsel); *State v. Bunde*, 556 N.W.2d 917, 918 (Minn. App. 1996) (stating this court reviews de novo the application of statutory criteria to the facts found when considering a challenge to an arrest).

A person committed as a sexually dangerous person or sexual psychopathic personality "shall not be provisionally discharged unless the committed person is capable of making an acceptable adjustment to open society." Minn. Stat. § 253D.30, subd. 1(a) (2016). When determining whether a provisional discharge is appropriate, the following factors must be considered:

> (1) whether the committed person's course of treatment and present mental status indicate there is no longer a need for treatment and supervision in the committed person's current treatment setting; and

> (2) whether the conditions of the provisional discharge plan will provide a reasonable degree of protection to the public and will enable the committed person to adjust successfully to the community.

*Id.*, subd. 1(b) (2016).

The party seeking "provisional discharge bears the burden of going forward

with the evidence, which means presenting a prima facie case with competent evidence to show that the person is entitled to the requested relief." Minn. Stat. § 253D.28, subd. 2(d) (2016). If the petitioning party meets this burden, the party opposing provisional discharge bears the burden of proving by clear and convincing evidence that the provisional discharge should be denied. *Id.*

## I. Provisional Discharge to a Nonexistent Placement

■ We first address the commissioner's argument that the judicial appeal panel erred by ordering Kropp's provisional discharge to a placement that does not exist. The provisional-discharge plan presented to the SRB requires that Kropp "will reside at a residential location that has been approved by the MSOP Executive Director as being suitable for Mr. Kropp's housing needs and provides reasonable protection for local community and general public safety." Under the plan, the executive director may restrict Kropp's use of and movement in, on, or around the residence, and may require video and/or electronic monitoring of the residence, grounds, windows, doors, and outbuildings.

The provisional-discharge plan explicitly requires Kropp to reside in a location that has been approved by the MSOP executive director as providing reasonable protection for public safety. The commissioner argues that no such placement exists, because the executive director does not believe that Kropp can be safely provisionally discharged. For the reasons set forth below, we are unpersuaded by the commissioner's argument.

The legislature empowered the commissioner of human services to establish and maintain MSOP for the purpose of providing specialized sex offender assessment, diagnosis, care, treatment, and supervision. Minn. Stat. § 246B.02 (2016). The executive director of MSOP is the person charged with the overall responsibility for the operation of MSOP. Minn. Stat. § 246B.01, subd. 2c (2016).

A petition for provisional discharge may be filed by the committed person or the executive director. Minn. Stat. § 253D.27, subd. 2 (2016). The petition must then be considered by a panel of the SRB. *Id.* The SRB must hold a hearing on each petition and, within 30 days of the hearing, must issue a report, including findings of fact and a recommendation regarding the approval or denial of the petition. *Id.*, subds. 3-4 (2016). The commissioner shall forward the SRB's report to the judicial appeal panel and every person entitled to statutory notice. *Id.*, subd. 4.

A petition for rehearing and reconsideration by the judicial appeal panel may be filed by the committed person, the commissioner, the committing county attorney, or the county with financial responsibility.[1] Minn. Stat. § 253D.28, subd. 1(a) (2016). When a petition for rehearing and reconsideration is filed, the judicial appeal panel must hold a hearing. *Id.*, subd. 1(b) (2016). Any person may oppose the petition. *Id.*, subd. 2(b) (2016). The committed person, commissioner, and county attorneys of the committing county and county of financial responsibility must inform the judicial appeal panel and opposing party whether they support or oppose the petition. *Id.* The judicial appeal panel may appoint examiners, must hear and receive all rele-

---

1. "If no party petitions the judicial appeal panel for a rehearing or reconsideration within 30 days, the judicial appeal panel shall either issue an order adopting the recommen-dations of the special review board or set the matter on for a hearing." Minn. Stat. § 253D.28, subd. 1(c) (2016).

vant testimony and evidence, and must make a record of the proceedings. *Id.*, subd. 2(c) (2016). The panel shall consider the petition de novo and shall rule upon the petition. *Id.*, subd. 3. The panel may grant provisional discharge, but only on terms or conditions presented to the SRB. *Id.*

Under this statutory scheme, the judicial appeal panel alone has the authority to grant or deny a provisional discharge. *Id.* Neither the executive director nor the commissioner has the authority to grant or deny provisional-discharge petitions. Rather, the executive director and commissioner act as parties who may file petitions and state their support or opposition to any petition filed. Minn. Stat. §§ 253D.27, subds. 1-2, .28, subds. 1(a)-(b), 2(a)-(b).

Here, the judicial appeal panel ordered the executive director to develop a provisional-discharge plan in conjunction with Kropp. Because MSOP did not believe that Kropp could be safely provisionally discharged to any location, it included within the plan a term requiring Kropp to reside at a location approved by the executive director of MSOP. The judicial appeal panel granted Kropp a provisional discharge after concluding that the conditions set forth in his provisional-discharge plan will provide a reasonable degree of safety to the public and enable Kropp to successfully adjust to the community.

The commissioner now argues that Kropp cannot be provisionally discharged, because the executive director does not believe that provisional discharge is safe and will not approve of any residential placement. In effect, the commissioner asks us to conclude that, by including a term that requires Kropp to reside in a location that is approved by the executive director, the provisional-discharge plan gave the executive director the power to deny Kropp's provisional discharge despite the judicial appeal panel's grant. Because the statutory scheme vests the judicial appeal panel, not the executive director, with the power to grant or deny provisional-discharge petitions, the executive director cannot unilaterally prevent Kropp's provisional discharge despite the judicial appeal panel's grant. As a result, we conclude that the judicial appeal panel did not err by granting a provisional discharge to a non-existent placement.

The commissioner additionally challenges the grant of provisional discharge, arguing that a provisional discharge to a particular placement or treatment program cannot be granted without evidence that such a placement or program is available. However, the commissioner fails to recognize that Kropp's provisional-discharge plan does not specify the particular residential location where Kropp must be placed. Rather, the plan describes the type of residential placement appropriate for Kropp. Because the provisional-discharge plan does not require a particular residential placement, the commissioner's argument is inapplicable to the facts of this case.

Even if we construed the plan to require a particular residential placement, we are unpersuaded by the commissioner's argument that Kropp had to produce evidence showing that a placement meeting the plan's conditions was available to him. To support this argument, the commissioner relies on unpublished opinions from this court. Unpublished opinions are not precedential, but may be persuasive. Minn. Stat. § 480A.08, subd. 3 (2016); *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800 (Minn. App. 1993). Because the cases relied upon by the commissioner involve circumstances that differ from those presented here, we are not persuaded by her argument. Here, the record evidence does not show that a residential placement meeting the plan's

terms is unavailable to Kropp. For these reasons, the judicial appeal panel did not err by granting provisional discharge.

## II. Delegation of Judicial Authority

 The commissioner next argues that the judicial appeal panel erred by delegating its judicial authority to the executive director of MSOP. Kropp asserts that the delegation issue was not properly raised, because it was not presented to the judicial appeal panel. Generally, a party may not raise an issue or argument for the first time on appeal and thereby seek relief on an issue that was not presented to the initial decision-maker. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn. 1988); *Doe 175 ex rel. Doe 175 v. Columbia Heights Sch. Dist., ISD No. 13,* 842 N.W.2d 38, 42 (Minn. App. 2014). The commissioner argues that she did not waive the delegation argument, because the argument was presented in her closing argument at the phase II hearing. During this closing argument, counsel for the commissioner argued that the panel could not provisionally discharge Kropp on terms or conditions that were not presented to the SRB, and that the panel could not grant provisional discharge under the plan unless a residential location was identified and included in the provisional-discharge order. However, the commissioner's closing argument did not mention delegation or assert that the panel would violate any statutory obligation by granting provisional discharge according to the terms of Kropp's plan. After reviewing the record, we conclude that the delegation issue was not presented to the SRB or the judicial appeal panel.

 In her reply brief, the commissioner argues that we should consider her delegation argument even if she failed to raise the delegation issue below. In support of this argument, the commissioner cites *Holen v. Minneapolis-St. Paul Met-*

*ro. Airports Comm'n,* 250 Minn. 130, 84 N.W.2d 282 (1957). In *Holen,* the supreme court explained that

> an appellate court may base its decision upon a theory not presented to or considered by the trial court where the question raised for the first time on appeal is plainly decisive of the entire controversy on its merits, and where ... there is no possible advantage or disadvantage to either party in not having had a prior ruling by the trial court on the question.

250 Minn. at 135, 84 N.W.2d at 286 (emphasis omitted). In her briefs, the commissioner fails to argue why no party could possibly be advantaged or disadvantaged by the lack of a prior ruling on the delegation question. At oral argument, the commissioner asserted that there was no unfair surprise because the delegation issue presents a purely legal question and does not require the development of a factual record.

 Minnesota appellate courts decline to reach an issue in the absence of adequate briefing. *State Dept. of Labor & Indus. v. Wintz Parcel Drivers, Inc.,* 558 N.W.2d 480, 480 (Minn. 1997). Because the commissioner failed to offer any argument as to why no party would be advantaged or disadvantaged by the lack of a prior ruling in her briefs and offered only minimal argument on that issue at oral argument, we decline to exercise permissive review of the delegation issue. As a result, we do not consider whether the judicial appeal panel erred by delegating its judicial authority to the executive director of MSOP.

## III. Commissioner's Burden to Show that Petition Should Be Denied

 Finally, the commissioner asserts that the judicial appeal panel erred by concluding that she failed to show by

clear and convincing evidence that provisional discharge should be denied. Once Kropp met his burden of production, the commissioner had the burden of proving by clear and convincing evidence that the provisional discharge should be denied. *See* Minn. Stat. § 253.28, subd. 2(d) (describing each party's burden). "The supreme court has defined clear and convincing evidence as 'more than a preponderance of the evidence but less than proof beyond a reasonable doubt.'" *Limberg v. Mitchell*, 834 N.W.2d 211, 218 (Minn. App. 2013) (quoting *Weber v. Anderson*, 269 N.W.2d 892, 895 (Minn. 1978)). The clear-and-convincing-evidence standard is met when the truth of the facts asserted is highly probable. *Id.*

The commissioner argues that the judicial appeal panel erred by relying on Dr. Donchenko's statement that her concerns regarding Kropp's residential placement would be alleviated if he were *willing* to cooperate with a provisional-discharge plan that included a residential treatment setting chosen and approved by the commissioner.[2] The commissioner asserts that by relying on this statement, the panel substituted MSOP's judgment for Dr. Donchenko's and its own. At the time of the phase II hearing, Kropp had been under commitment at MSOP for approximately 18 years. Because of this lengthy commitment, Dr. Donchenko could reasonably conclude that MSOP was able to determine which residential placement would best meet Kropp's treatment needs and protect the public. Dr. Donchenko was in a position to reach this conclusion using her own judgment. Because she reviewed Kropp's records at MSOP, including risk assessments, treatment plans, and treatment reports, Dr. Donchenko could independently determine whether MSOP accurately perceived Kropp's treatment needs and developed appropriate treatment plans. The commissioner has not provided any legal authority that would bar the judicial appeal panel from relying on Dr. Donchenko's statement that the commissioner's ability to choose Kropp's placement would alleviate her housing concerns. For these reasons, we reject the commissioner's argument.

The commissioner also asserts that the panel erred by relying on Dr. Donchenko's testimony in support of provisional discharge, because her support was conditioned on placement features that were not included in Kropp's provisional-discharge plan. At the phase I hearing, Dr. Donchenko testified that she believed Kropp met the statutory criteria for provisional discharge, "but the stipulation would be that there would have to be a program or a placement for him to go to." She believed that it would be appropriate to put Kropp on intensive supervised release and discussed the benefits of the Zumbro House program. She stated that she would not support the type of plan that was before the SRB at the phase I hearing and noted

**2.** Although Dr. Donchenko testified that her concerns regarding residential placement would be alleviated if Kropp agreed to cooperate with a plan that included a residential treatment setting chosen and approved by the *commissioner*, the terms of Kropp's plan provide that his residential placement must be approved by the *executive director* of MSOP. Both the commissioner and executive director are responsible for MSOP. Minn. Stat. §§ 246B.01, subd. 2c (stating that the executive director is responsible for MSOP's operation), .02 (stating that the commissioner is responsible for maintaining MSOP). Neither party argues that Dr. Donchenko's reference to the commissioner, rather than the executive director, should affect the weight given to her testimony. For these reasons, we do not determine what effect, if any, the discrepancy between Dr. Donchenko's testimony and the plan's language should have had on the panel's consideration of Dr. Donchenko's testimony.

that the plan lacked a structured housing program.

At the phase II hearing, Dr. Donchenko testified that the features of Kropp's residential placement would be important to her in deciding whether to support his provisional discharge. Where the placement is located and whether it is near support people[3] would be important factors to consider. She also stated that she would like to see some type of individual therapy component. When asked whether her support for Kropp's provisional discharge was conditioned on finding out more information about the particular placement Kropp would receive, Dr. Donchenko stated that "there needs to be a plan in place.... [T]here has been no facility that has accepted Mr. Kropp. There has been no paperwork sent to facilities to review in support of provisional discharge. I would like to see that done before a provisional discharge." She later explained that her concerns regarding Kropp's residential placement would be alleviated if he were willing to cooperate with a provisional-discharge plan that included a residential treatment setting chosen and approved by the commissioner.

Dr. Donchenko's testimony is consistent with her September 19, 2016 report. In this report, Dr. Donchenko explained that Kropp had advanced in treatment and internalized necessary skills, and she concluded that provisional discharge into the community was the most appropriate step. Dr. Donchenko consistently stated that Kropp should be provisionally discharged provided there was a placement for him. She did not condition her support on finding out the specific placement to which Kropp would be provisionally discharged. Rather, she explained features that she believed would be appropriate and stated that her concerns regarding his placement would be alleviated if Kropp would agree to be placed in a residential treatment setting chosen and approved by the commissioner. For these reasons, we conclude that the judicial appeal panel did not err by relying on Dr. Donchenko's testimony in support of provisional discharge. After carefully reviewing the record, we conclude that the commissioner failed to prove by clear and convincing evidence that Kropp's provisional-discharge petition should be denied.

## DECISION

Because the judicial appeal panel did not grant provisional discharge to a nonexistent placement, and because the commissioner failed to show by clear and convincing evidence that provisional discharge should be denied, we conclude that the judicial appeal panel did not err by granting Kropp's provisional-discharge petition.

**Affirmed.**

---

**3.** Support people are able to recognize when Kropp might be in an offense cycle and inter- vene or help Kropp get out of the offense cycle.