*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1744**

In the Matter of the Civil Commitment of: Rodrick Dean Pouncy, Jr.

**Filed May 13, 2024**
**Affirmed**
**Bjorkman, Judge**

Anoka County District Court
File No. 02-PR-22-687

Jennifer L. Thon, Jonathan M. Comuzzi, Jones Law Office, Mankato, Minnesota (for appellant Rodrick Pouncy, Jr.)

Brad Johnson, Anoka County Attorney, Kelsey R. Kelley, Ellen Lavigne, Assistant County Attorneys, Anoka, Minnesota (for respondent Anoka County)

Considered and decided by Larkin, Presiding Judge; Ross, Judge; and Bjorkman, Judge.

**NONPRECEDENTIAL OPINION**

**BJORKMAN**, Judge

Appellant challenges his indeterminate civil commitment as a sexually dangerous person (SDP) and a sexual psychopathic personality (SPP), arguing that the district court clearly erred in finding that he (1) "engaged in a course of harmful sexual conduct," (2) demonstrated a "habitual course of misconduct," (3) is "highly likely to reoffend," and (4) is "dangerous to others." Because the record supports the district court's factual determinations, we affirm.

## FACTS

Appellant Rodrick Dean Pouncy, Jr. committed numerous domestic assaults and seven reported sexual assaults between 2014 and 2022. The State of Minnesota charged him with four sexual-assault offenses in separate proceedings; all four proceedings were suspended because Pouncy was found incompetent under Minn. R. Crim. P. 20.01. The sexual assaults became increasingly violent. While the first incidents involved unwanted touching and kissing (consistent with fifth-degree criminal sexual conduct), later incidents involved nonconsensual sexual intercourse with minors (consistent with third-degree criminal sexual conduct), and most recently forced sexual intercourse accompanied by death threats and violent behavior including strangulation (consistent with first-degree criminal sexual conduct). All of Pouncy's sexual-assault victims were vulnerable because of their age, cognitive disabilities, or both.

Four of Pouncy's charged domestic assaults[1] involved the same victim and at least five other reported incidents were not charged. These incidents of domestic assault have resulted in orders for protection, no-contact orders, and harassment restraining orders. Pouncy has violated these orders, but prosecutions have been dismissed or suspended due to his incompetency. In sum, Pouncy had at least two reported sexual or domestic assaults every year from 2014 until he was jailed in 2022.[2]

---

[1] All of Pouncy's charged domestic-assault offenses were dismissed or the proceedings were stayed due to Pouncy's incompetency.

[2] Pouncy also has two prior assault charges, one that was dismissed in 2015 for incompetency and one that was dismissed in 2022 "in the interests of justice." And he has a pending felony motor-vehicle theft charge. Since going to jail in 2022, Pouncy has

Pouncy has a very low IQ[3] and has been diagnosed with an intellectual development disorder, a personality disorder that affects his impulse control, paraphilic disorder with sexual sadism and coercive paraphilia traits, and a cannabis-use disorder. His participation in treatment to address his sexual impulses and aggressive behaviors has been minimal and inconsistent, due in large part to his low cognitive function. Pouncy has been under the guardianship of his mother since he turned 18 in 2016.

In January 2023, respondent Anoka County petitioned for Pouncy to be civilly committed as an SDP and an SPP. Two doctors testified at the May trial, the pre-petition examiner retained by the county, Dr. Michael Thompson, MSW, Psy.D., L.P., and the court-appointed examiner, Dr. Tyler Dority, Ph.D., L.P.[4] Both doctors reviewed Pouncy's extensive record and conducted standard actuarial assessments, and Dr. Dority interviewed Pouncy. Both doctors opined that Pouncy meets the statutory requirements for civil commitment as an SDP and an SPP. The district court expressly found the doctors' shared opinion "credible, supported, and persuasive."

Four of Pouncy's victims also testified, providing details regarding his conduct and the harm it caused them. Two of the victims, E.J.T. and L.R.B., testified that Pouncy strangled them during the course of the sexual assault. And the district court received 25

---

assaulted multiple corrections officers and made threats to kill, harm, and "blow up" other officers.

[3] Pouncy has an IQ between 40 and 60.

[4] The parties stipulated that both doctors have the experience and training to offer relevant expert testimony. Pouncy did not ask the district court to appoint a second examiner.

exhibits, including the doctors' written reports and other records from Pouncy's various criminal incidents and failed treatments. The district court found that clear and convincing evidence establishes that Pouncy meets the criteria for commitment as an SDP pursuant to Minn. Stat. § 253D.02, subd. 16 (2022), and an SPP pursuant to Minn. Stat. § 253D.02, subd. 15 (2022). The court also determined that there is no less-restrictive alternative to commitment to the Minnesota Sexual Offender Program (MSOP) that will meet Pouncy's treatment needs and ensure public safety.

Pouncy appeals.

**DECISION**

A person may be civilly committed as an SDP or an SPP if the county proves the statutory commitment criteria by clear and convincing evidence. Minn. Stat. § 253D.07, subd. 3 (2022). We review a district court's factual findings regarding the criteria for clear error. *In re Civ. Commitment of Stone*, 711 N.W.2d 831, 836 (Minn. App. 2006), *rev. denied* (Minn. June 20, 2006). Under this standard, we view the evidence in a light most favorable to the findings, do not reweigh the evidence, and do not resolve conflicting evidence. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221-22 (Minn. 2021). But whether the evidence meets the statutory requirements for commitment is a question of law, which we review de novo. *In re Civ. Commitment of Crosby*, 824 N.W.2d 351, 356 (Minn. App. 2013), *rev. denied* (Minn. Mar. 27, 2013).

An SDP is a person who: (1) "has engaged in a course of harmful sexual conduct"; (2) "has manifested a sexual, personality, or other mental disorder or dysfunction"; and (3) "as a result, is likely to engage in acts of harmful sexual conduct." Minn. Stat.

4

§ 253D.02, subd. 16. An SPP is a person who (1) has "conditions of emotional instability," impulsive behavior, "lack of customary standards of good judgment," "failure to appreciate the consequences of personal acts, or a combination of any of these conditions, which render the person irresponsible for personal conduct with respect to sexual matters"; (2) has "an utter lack of power to control" his sexual impulses, as evidenced by "a habitual course of misconduct in sexual matters"; and (3) "as a result, is dangerous to other persons." *Id.*, subd. 15.

If a district court determines that the statutory commitment criteria have been proven,

> the court shall commit the person to a secure treatment facility unless the person establishes by clear and convincing evidence that a less restrictive treatment program is available, is willing to accept the [person] under commitment, and is consistent with the person's treatment needs and the requirements of public safety.

Minn. Stat. § 253D.07, subd. 3.

Pouncy only challenges the district court's SDP findings that he (1) "engaged in a course of harmful sexual conduct" and (2) is "highly likely to reoffend"; and its SPP findings that he (1) exhibited "a habitual course of misconduct in sexual matters" and (2) is "dangerous to others." [5] Because of the similarities between the SDP and SPP statutory criteria, we consider the first challenged findings from each commitment standard together;

---

[5] Pouncy does not dispute the district court's findings of fact regarding the other commitment criteria. And he does not challenge the district court's determination that there is no less-restrictive alternative to commitment to MSOP.

and, separately, we consider the second challenged findings from each statutory criteria together.

## I. The district court did not clearly err by finding that Pouncy engaged in "a course of harmful sexual conduct" and exhibited "a habitual course of misconduct in sexual matters."

**SDP Findings**

"Harmful sexual conduct" is defined as "sexual conduct that creates a substantial likelihood of serious physical or emotional harm to another." Minn. Stat. § 253D.02, subd. 8(a) (2022). It is presumed that the conduct described in the statutes establishing criminal sexual conduct in the first and third degrees meets this definition. Minn. Stat. § 253D.02, subd. 8(b) (2022) (establishing a rebuttable presumption). Repeated incidents of such conduct may constitute a "course" even if they did not occur recently, and "the existence of a period in which a person has not committed sex offenses does not preclude a determination that he engaged in a course of sexual misconduct." *Stone*, 711 N.W.2d at 834-35, 837-39 (reported aggressive interactions with young girls every 1-3 years constituted a course of harmful sexual conduct). In determining whether a person engaged in a course of harmful sexual conduct, courts consider "both conduct for which the [person] was convicted and conduct that did not result in a conviction." *Id*. at 837.

Pouncy broadly contends that the record does not support the challenged findings. And he takes particular issue with the district court's findings that he strangled victims E.J.T. and L.R.B., pointing to Dr. Thompson's testimony that he would expect some kind of bruising or effect on the person's vocal cords, which neither victim presented. None of Pouncy's arguments persuade us to reverse.

6

First, the absence of strangulation marks does not—in and of itself—make the district court's strangulation findings clearly erroneous. Both E.J.T. and L.R.B. testified that Pouncy strangled them. E.J.T., the victim of the charged first-degree criminal-sexual-conduct offense, recounted Pouncy strangling her with both hands for 30 seconds. Likewise, L.R.B. testified that Pouncy choked her with both hands, consistent with prior statements she made to a doctor that she was strangled with a "ten-out-of-ten grip." Dr. Thompson's testimony that he would have expected some kind of bruising or effect on E.J.T.'s vocal cords and some kind of mark on L.R.B. is evidence that the district court was entitled to consider.[6] But the court was not bound to credit any particular evidence—even expert testimony. *See Kenney*, 963 N.W.2d at 224-25 (explaining that the fact-finder is not bound by expert testimony, even when uncontradicted). Rather, the district court weighed the competing evidence as to strangulation, which was uniquely its task as the finder of fact. *In re Civil Commitment of Ince*, 847 N.W.2d 13, 23-24 (Minn. 2014) ("As the trier of fact, the district court [is] in the best position . . . to evaluate the credibility of witnesses—a critical function in [civil-commitment] cases that rely so heavily on the opinions of experts.").

Moreover, even if the district court clearly erred by finding that Pouncy strangled two of his victims, ample other evidence supports a finding that his conduct harmed his sexual-assault victims. *See* Minn. Stat. § 253D.02, subd. 8(a) (defining "harmful sexual

---

[6] Dr. Dority offered no opinion regarding E.J.T.'s lack of bruising or other marks of strangulation. As to L.R.B., Dr. Dority testified that he would expect some physical evidence if a person were strangled over several hours.

conduct" as "sexual conduct that creates a substantial likelihood of serious physical or emotional harm to another"). All four testifying victims described the harm they experienced as a result of Pouncy's acts and death threats, including physical pain and the fear and trauma they have lived with since the incidents occurred. And Dr. Thompson opined that the overall record demonstrates that Pouncy engaged in harmful sexual conduct.

Second, the record defeats Pouncy's argument that the district court misapplied the law by finding that he engaged in sexual conduct that created "likely" physical or emotional harm to others when Minn. Stat. § 253D.02, subd. 8(a), requires a finding that the sexual conduct created a "substantial likelihood of serious physical or emotional harm to another." A careful review of the district court's findings shows that it applied the correct standard. It is true that the district court uses the adjective "likely," in some of its findings. But each time it does so, it follows up with a reference to the "substantial likelihood" standard. For example, in paragraph 254 of its order, the district court "finds the testimony and supporting evidence regarding the pending 3rd degree criminal sexual conduct charge related to L.R.B. . . . proves that such conduct is likely to cause substantial physical or emotional harm." But the paragraph concludes with the statement "this incident has a substantial likelihood of creating serious or emotional harm."

Finally, Pouncy does not point to any other specific findings of fact as lacking record support and cites no legal authority for his general assertion that the district court misapplied the law. We do not presume error on appeal. *Loth v. Loth*, 35 N.W.2d 542, 546 (Minn. 1949). Rather, the appellant must show that the district court erred. *Potter v.*

8

*Potter*, 27 N.W.2d 784, 786 (Minn. 1947). Absent such a showing, we do not consider an appellant's arguments. *See Christie v. Est. of Christie*, 911 N.W.2d 833, 837-38 n.4 (Minn. 2018) (stating that arguments without analysis or citation to legal authority are waived); *State, Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (declining to consider an inadequately briefed question); *In re Civ. Commitment of Kropp*, 895 N.W.2d 647, 653 (Minn. App. 2017) (applying *Wintz* in a civil-commitment matter), *rev. denied* (Minn. June 20, 2017).

In sum, the district court made supported findings that Pouncy engaged in the requisite "sexual conduct that has created a substantial likelihood of serious physical or emotional harm to another." *See* Minn. Stat. § 253D.02, subd. 8(a).

**SPP Findings**

Under the SPP statute, Pouncy only meets the commitment criteria if he exhibited "a habitual course of misconduct in sexual matters." Minn. Stat. § 253D.02, subd. 15. Pouncy again broadly argues that the record does not support the district court's finding that he exhibited a habit of sexual misconduct. The extensive record, including Pouncy's charged and uncharged conduct, defeats this contention. Any discrepancies in the accounts of his misconduct can be attributed to any number of circumstances: victims who are vulnerable due to their young age and cognitive disabilities, Pouncy's own cognitive function, the passage of time, and the impact of trauma on a person's ability to recall an event. Based on our careful review of the record, we discern no clear error by the district court in finding that Pouncy exhibited a habitual course of sexual misconduct for the same reasons he meets the harmful-sexual-conduct criterion of the SDP statute.

9

**II.  The district court did not clearly err by finding that Pouncy is "highly likely to reoffend" and is "dangerous to others."**

**SDP Findings**

To be committed as an SDP, clear and convincing evidence must establish that a person "is likely to engage in acts of harmful sexual conduct" as a result of sexual or other mental disorder or dysfunction.  Minn. Stat. § 253D.02, subd. 16; *see In re Linehan*, 544 N.W.2d 308, 318 (Minn. App. 1996) (*Linehan II*) ("[T]he statute's term 'likely' requires future misconduct to be 'highly likely.'"), *aff'd*, 557 N.W.2d 171 (Minn. 1996), *vacated and remanded sub nom.*, *Linehan v. Minnesota*, 522 U.S. 1011 (1997), *aff'd on remand*, 594 N.W.2d 867 (Minn. 1999) (affirming appellant's civil commitment under SDP statute).

In evaluating the likelihood that an individual will engage in future harmful sexual conduct, district courts consider:

> (a) the person's relevant demographic characteristics (*e.g.*, age, education, etc.); (b) the person's history of violent behavior (paying particular attention to recency, severity, and frequency of violent acts); (c) the base rate statistics for violent behavior among individuals of this person's background (*e.g.*, data showing the rate at which rapists recidivate, the correlation between age and criminal sexual activity, etc.); (d) the sources of stress in the environment (cognitive and affective factors which indicate that the person may be predisposed to cope with stress in a violent or nonviolent manner); (e) the similarity of the present or future context to those contexts in which the person has used violence in the past; and (f) the person's record with respect to sex therapy programs.

*In re Linehan*, 518 N.W.2d 609, 614 (Minn. 1994) (*Linehan I*); *see In re Linehan*, 557 N.W.2d 171, 189 (Minn. 1996) (*Linehan III*) (applying these factors to SDP case).  We note that the *Linehan* factors may overlap with factors accessed by other actuarial risk-

10

assessment tools. Indeed, our supreme court has acknowledged this possibility and cautioned district courts "to be wary of the potential for factor repetition." *Ince*, 847 N.W.2d at 24. But the supreme court affirmed its reliance "on the ability of district courts to weigh the evidence in each case, drawing the appropriate conclusions based on consideration of all the evidence." *Id.*

Pouncy first argues that the district court erred by crediting the doctors' testimony regarding his base-rate statistics because both acknowledged errors in scoring one of the risk-assessment tools, the Static-99R. The Static-99R is an actuarial risk-assessment tool that ranks a sexual offender's relative recidivism risk based on ten objective factors. It is objectively scored "based on unchanging, enduring factors, called static factors, correlated with long-term re-offense rates of similar sexual offenders with the same score." A person's total score correlates to five risk categories ranging from very low risk (-3 through -2) to well-above average risk (6+). Both doctors scored Pouncy in the well-above average-risk category.

Dr. Thompson scored Pouncy as a 7. At trial, he admitted this score was incorrect because he included one point for prior nonsexual violence convictions when in fact Pouncy had been charged but not convicted of such offenses due to his incompetency. Dr. Thompson further explained that Pouncy's corrected score of 6 still placed him in the highest risk category. And he opined "with a degree of certainty customary in the field of psychology" that regardless of the error in the Static-99R scoring, Pouncy meets the criteria for civil commitment.

11

As to Dr. Dority, Pouncy seems to take issue with both the Static-99R score he calculated and a reference in his written report to whether placement in an institution should be considered based on Pouncy's own need for protection and care as a vulnerable adult. Dr. Dority directly addressed the scoring error, stating that it does not alter his opinion that Pouncy meets the statutory commitment criteria. And Pouncy does not explain how the single reference to another potential reason for placing Pouncy in a treatment facility undermines Dr. Dority's analysis or supports his bald assertion that Dr. Dority's opinions are "inconsistent and equivocal." *See State v. Bursch*, 905 N.W.2d 884, 889 (Minn. App. 2017) ("Arguments are forfeited if they are presented in a summary and conclusory form, do not cite to applicable law, and fail to analyze the law claiming that errors of law occurred."); *Joelson v. O'Keefe*, 594 N.W.2d 905, 909 (Minn. App. 1999) (declining to address appellant's challenge to district court's SPP findings in the absence of supporting argument or authority), *rev. denied* (Minn. July 28, 1999).

Ultimately, the district court determined, "To the extent [Dr. Dority's] scores varied or might be revised, [Pouncy's] risk level remains in the highest, or second highest, risk levels." We defer to the district court as the fact-finder to make these credibility determinations. *See In re Civ. Commitment of Ramey*, 648 N.W.2d 260, 270 (Minn. App. 2002) ("The district court [has] the advantage of hearing the witnesses personally and judging their relative credibility. A reviewing court generally defers to the district court in matters of witness credibility."), *rev. denied* (Minn. Sept. 17, 2002).

Pouncy next asserts that the district court's analysis includes impermissible factor repetition. This argument is unavailing. In its order, the district court explained that "the

*Linehan* factors are useful in considering the evidence of risk," and gave particular weight to:

> (i) [Pouncy's] increasing age, over time, at the time of the charged offenses demonstrating that [Pouncy] has not aged out of amassed sufficient life experiences so as [to] cease reoffending . . . ; (ii) [Pouncy's] relative lack of education; (iii) [Pouncy's] history of violence toward the victims including the use of violence to perpetrate the offenses and continued violence and threats thereafter; . . . (iv) and the recency and severity in which [Pouncy] used violence (including strangulation, spitting in one victim's mouth, and threatening to kill the victim during the course of vaginal rape) . . . ; and (vi) [Pouncy's] demonstrated lack of success in sex offender related programming . . . .

But the court stated that it did not "base its ruling solely on the *Linehan* factors." And it acknowledged "the potential, when considering the various types of evidence, for 'factor repetition.'" Indeed, the district court expressly stated that it "discounted its reliance on *Linehan* factors potentially duplicative of that incorporated in the various actuarial tools, including, for example [Pouncy's] demographics (age), history of violence, and record with respect to sex offender therapy program[s]."

The record does not persuade us to disturb the district court's detailed and comprehensive findings of fact. The commitment determination is a "difficult task" that requires district court's to carefully balance the relevant facts gleaned from a "voluminous and complex" record. *Linehan III*, 557 N.W.2d at 191. We give great deference to the district court's weighing of evidence relevant to whether an individual is highly likely to engage in harmful sexual conduct. *Ince*, 847 N.W.2d at 23. We see no clear error in the

13

district court's finding that Pouncy is highly likely to engage in future harmful sexual conduct.

**SPP Findings**

Under the SPP statute, the district court found Pouncy is dangerous to others "for the same reasons" that he is highly likely to commit future sexual harm. Pouncy's low IQ that requires a guardianship, history of engaging in conduct that resulted in at least two charges of sexual and domestic assault each year from 2014 to 2022, the increasingly violent nature of his conduct, and his continued inability to stand trial due to incompetency all support this finding.

Based on our careful review of the record, we conclude that the district court did not err by finding that Pouncy poses a danger to others.

**Affirmed.**